UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 15 |
| SPI INVESTMENT FUND SPC (IN OFFICIAL LIQUIDATION),[1] *et al.*, | Case No. 24-21184 |
| | (Joint Administration Requested) |
| Debtors in a Foreign Proceeding. | |
| _____/ | |

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN INSOLVENCY
PROCEEDINGS AND APPLICATION FOR ADDITIONAL RELIEF PURSUANT TO
SECTIONS 542, 1502, 1504, 1507, 1515, 1517, 1520 AND 1521 OF THE
BANKRUPTCY CODE AND INCORPORATED MEMORANDUM OF LAW**

---

[1] The last four digits of the foreign identification number follow in parentheses: SPI Investment Fund SPC (in Official Liquidation) (9606); International Portfolio Allocation Ltd. (in Official Liquidation) (7986); and International Capital Allocation Ltd. (in Official Liquidation) (2570). The registered office of the foreign debtors is c/o FTI Consulting (Cayman) Ltd., Suite 3206, 53 Market Street, Camana Bay, PO Box 30613, Grand Cayman KY1-1203, Cayman Islands.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................2

JURISDICTION AND VENUE .................................................................6

FACTUAL BACKGROUND .....................................................................7

    I.    THE FUNDS' FORMATION AND MANAGEMENT ...............................7

        A.    SPI's Formation and Management .........................................7

        B.    ICA's Formation and Management ........................................8

        C.    IPA's Formation and Management .........................................9

    II.    THE FUNDS' INTERCOMPANY LOANS AND THE LOANS TO SINAI HOLDINGS ..................10

        A.    The SPI-ICA Loan ...........................................................10

        B.    The AlphaNotes-ICA Loan ................................................11

        C.    The ICA-Sinai Holdings Loan ...........................................11

        D.    The SPI-IPA Loan............................................................12

        E.    The IPA-Sinai Holdings Loan ............................................13

    III.    CONCERNS RELATING TO THE OPERATIONS OF THE FUNDS .............13

        A.    Falsification of SPI's Financial Statements .........................13

        B.    The Inflation and Unreliability of SPI's Net Asset Value .........14

    IV.    THE FUNDS ENTER OFFICIAL LIQUIDATION IN THE CAYMAN ISLANDS ...........................15

        A.    The Supervision Petitions and the Voluntary Liquidation of SPI............15

        B.    The Grand Court Issues the SPI Supervision Order .................16

        C.    The Grand Court Enters the ICA and IPA Supervision Orders .............18

    V.    THE PROGRESS OF THE CAYMAN PROCEEDINGS .............................19

ARGUMENT ......................................................................................20

    I.    THE CAYMAN PROCEEDINGS SHOULD BE RECOGNIZED UNDER CHAPTER 15 .................20

        A.    Chapter 15 of the Bankruptcy Code: Background and Purpose ..............21

        B.    The Cayman Proceedings are Each a "Foreign Proceeding" ...................23

        C.    The JOLs are the "Foreign Representatives" of the Funds ....................26

        D.    The Foreign Representatives Have Submitted the Required Materials ..................28

    II.    THE CAYMAN PROCEEDINGS ARE EACH A FOREIGN MAIN PROCEEDING ......................29

        A.    The COMI of the Funds is Presumed to be the Cayman Islands ...............29

B.      The Section 1516 Presumption is Confirmed Because it is Objectively
        Ascertainable that the Funds' COMI is the Cayman Islands ....................................30

C.      The Presumption is Confirmed Because it is Objectively Ascertainable that the
        Funds' COMI is the Cayman Islands ........................................................................31

III.    ALTERNATIVELY, THE CAYMAN PROCEEDINGS ARE EACH FOREIGN NONMAIN
        PROCEEDINGS ...............................................................................................................35

IV.     RECOGNITION OF THE CAYMAN PROCEEDINGS WOULD NOT BE MANIFESTLY
        CONTRARY TO THE PUBLIC POLICY OF THE UNITED STATES ...........................................36

V.      UPON RECOGNITION, THE COURT SHOULD GRANT ANCILLARY RELIEF TO THE
        FOREIGN REPRESENTATIVES ............................................................................................38

A.      Legal Standards.........................................................................................................38

B.      The Foreign Representatives' Requested Relief Will Promote the Purposes of
        Chapter 15 by Protecting the Assets of the Fund and the Interests of Any
        Creditors ...................................................................................................................41

CONCLUSION...........................................................................................................................43

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Al Zawawi¸*
  97 F.4th 1244 (11th Cir. 2024) ..................................................................21

*In re Al Zawawi¸*
  637 B.R. 663 (Bankr. M.D. Fla. 2022) .......................................................30

*In Re Ascot Fund Ltd.*,
  603 B.R. 271 (Bankr. S.D.N.Y. 2019)................................................ *passim*

*In re Atom Holdings*,
  No. 23-1343-PDR (Bankr. S.D. Fla. June 30, 2023) (ECF No. 37) .......................26

*In re B.C.I Fins. Pty Ltd.*,
  583 B.R. 288 (Bankr. S.D.N.Y. 2018).............................................................22, 42

*In re Bd. of Dirs. of Telecom Arg., S.A.*,
  528 F.3d 162 (2d Cir. 2008)...................................................................40

*In re British Am. Ins. Co. Ltd.¸*
  425 B.R. 884 (Bankr. S.D. Fla. 2010).................................................... *passim*

*In re British Am. Ins. Co. Ltd.*,
  488 B.R. 205 (Bankr. S.D. Fla. 2013).......................................................21, 39

*In re British Am. Isle of Venice (BVI) Ltd.*,
  441 B.R. 713 (Bankr. S.D. Fla. 2010)..............................................34, 36, 37

*In re Business Fin. Opportunities Fund (in Official Liquidation)*,
  No. 24-10577-pb (Bankr. S.D.N.Y.) (ECF No. 12)......................................26

*In re Cayman Investment Funds Master SPC (in Official Liquidation)*,
  24-12673-EPK (Bankr. S.D. Fla. July 24, 2024) (ECF No. 25) .............................26

*In re Comair Ltd.*,
  No. 21-10298 (JLG), 2021 WL 5312988 (Bankr. S.D.N.Y. Nov. 14, 2021) ...................41, 42

*In re Culligan Ltd.*,
  No. 20-12912 (JLG), 2021 WL 2787926 (Bankr. S.D.N.Y. July 2, 2021)......................27, 29

*In re ENNIA Caribe Holding N.V.*,
  596 B.R. 316 (Bankr. S.D.N.Y. 2019) ...................................................40

*In re Frontera Res. Caucasus Corp.*,
19-13418-mew (Bankr. S.D.N.Y. Jan. 21, 2020) (ECF No. 19)..............................26

*In re Inversora Eléctrica de Buenos Aires S.A.*,
560 B.R. 650 (Bankr. S.D.N.Y. 2016) ..............................................................39, 40

*In re Markus¸*
607 B.R. 379 (Bankr. S.D.N.Y. 2019), *vacated sub nom. in part on other
grounds*, *Markus v. Rozhkov*, 615 B.R. 679 (Bankr. S.D.N.Y. Apr. 3, 2020) ........39

*In re Massa Falida do Banco Cruziero do Sul, S.A.*,
637 B.R. 675 (Bankr. S.D. Fla. 2022)..................................................................22

*In re Millard*,
501 B.R. 644 (Bankr. S.D.N.Y. 2013) ..................................................................37

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
458 B.R. 63 (Bankr. S.D.N.Y 2011)......................................................................30

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
471 B.R. 342 (Bankr. S.D.N.Y. 2012)...................................................................39

*In re Mod. Land (China) Co., Ltd.*,
641 B.R. 768 (Bankr. S.D.N.Y. 2022)...................................................................32

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry)*,
714 F.3d 127 (2d Cir. 2013)........................................................................31, 36

*In re OAS S.A.*,
533 B.R. 83 (Bankr. S.D.N.Y. 2015) ....................................................................33

*In re Ocean Rig UDW Inc.*,
570 B.R. 687 (Bankr. S.D.N.Y. 2017).......................................................... *passim*

*In re Oi Brasil Holdings Coöperatief U.S.*,
578 B.R. 169 (Bankr. S.D.N.Y. 2017)...................................................................23

*In re Petroforte Brasileiro de Petróleo Ltda.¸*
542 B.R. 899 (Bankr. S.D. Fla. 2015).......................................................39, 40, 41

*In re Platinum Partners Value Arbitrage Fund (in Official Liquidation)*,
16-12282 (MG) (Bankr. S.D.N.Y. Nov. 23, 2016) (ECF No. 27) ...........................26

*In re Platinum Partners Value Arbitrage Fund L.P.*,
583 B.R. 803 (Bankr. S.D.N.Y. 2018)...........................................................39, 40

*In re Platinum Partners Value Arbitrage Fund L.P*,
No. 18CV5176 (DLC), 2018 WL 3207119 (S.D.N.Y. June 29, 2018) ....................22

*In re PT Bakrie Telecom Tbk*,
    601 B.R. 707 (Bankr. S.D.N.Y. 2019) ..................................................27

*In re Serviços de Petróleo Constellation S.A.*,
    600 B.R. 237 (Bankr. S.D.N.Y. 2019) .............................................33, 35

*In re Suntech Power Holdings Co., Ltd.*,
    520 B.R. 399 (Bankr. S.D.N.Y. 2014) ..................................................34

*In re Toft*,
    453 B.R. 186 (Bankr. S.D.N.Y. 2011) ..................................................41

*In re Zawawi*,
    634 B.R. 11 (M.D. Fla. 2022) ..............................................21, 22, 23

**Statutes**

11 U.S.C. ............................................................................ *passim*

11 U.S.C.
    § 101 ...................................................................... *passim*
    § 109 ............................................................................21
    § 150 .............................................................................5
    § 542 ......................................................................2, 39, 40
    § 1502 ................................................................1, 22, 30, 35
    § 1504 .............................................................................6
    § 1506 ...................................................................22, 36, 37
    § 1507 ......................................................................2, 40, 41
    § 1515 ...................................................................... *passim*
    § 1516 ...............................................................4, 27, 28, 29, 30
    § 1517 ...................................................................... *passim*
    § 1519 ............................................................................29
    § 1520 ...........................................................................2, 6
    § 1521 ...................................................................... *passim*
    § 1522 ............................................................................40

28 U.S.C.
    § 157 .............................................................................6
    § 157(b)(2)(P) ...................................................................6
    § 1334 ...........................................................................6
    § 1410(1) .......................................................................6
    § 1501 ...........................................................................6

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No.
    109-8, § 801 (2005) .............................................................21

Cayman Islands Companies Act (2023 Revision) ................................................................. *passim*
    Part V ...................................................................................................................................24
    Schedule 3, Part I ..........................................................................................................17, 19
    Schedule 3, Part II .........................................................................................................17, 19
    § 92(e) .................................................................................................................................15
    § 97.....................................................................................................................................24
    § 116(c) ..............................................................................................................................18
    § 124(1) .........................................................................................................................16, 19
    § 216.....................................................................................................................................7

**Other Authorities**

8 COLLIER ON BANKR. ¶ 1501.01 (16th ed.) .......................................................................21

Fed. R. Bankr. P. 1007(a)(4) ....................................................................................5, 28, 29

Fed. R. Bankr. P. 2004 .........................................................................................................39

Fed. R. Bankr. P. 7008 ...........................................................................................................6

H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 116 (2005)..................................30, 40

U.S. Const. art. III ...................................................................................................................6

Andrew Morrison, David Griffin, and Iain Gow, the duly appointed joint official liquidators of SPI Investment Fund SPC (in Official Liquidation) ("**SPI**") ("**SPI Liquidators**") and David Griffin and Yvonne Plamondon, the duly appointed joint official liquidators of International Capital Allocation Ltd. (in Official Liquidation) ("**ICA**") and International Portfolio Allocation Ltd. (in Official Liquidation) ("**IPA**") (together, the "**ICA and IPA Liquidators**") (SPI Liquidators and ICA and IPA Liquidators, together, the "**Foreign Representatives**" or the "**JOLs**"), which are wholly owned at present by SPI (collectively, the "**Funds**"), the Funds being in liquidation by way of the Financial Services Division of the Grand Court of the Cayman Islands (the "**Grand Court**") (cause nos. FSD 393 of 2023 (JAJ) (SPI), FSD 151 of 2024 (JAJ) (ICA), and FSD 153 of 2024 (JAJ) (IPA)) (collectively, the "**Cayman Proceedings**") as a result of the Grand Court's orders (collectively, the "**Supervision Orders**") made pursuant to petitions for the winding up of the Funds presented under the Cayman Islands Companies Act (2023 Revision) (the "**Companies Act**") and the Companies Winding Up Rules (2023 Consolidation) (the "**CWR**"), by their undersigned United States counsel, Holland & Knight LLP, respectfully submit this Verified Petition and Incorporated Memorandum of Law (together, the "**Petition**"), the accompanying Declaration of David Griffin, executed on October 28, 2024 (the "**Griffin Declaration**"), the Declaration of Stephen Gradwell Leontsinis, executed on October 28, 2024 (the "**Leontsinis Declaration**", together with the Griffin Declaration, the "**Declarations**"), for entry of an Order pursuant to Chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"):

(i)    recognizing the Cayman Proceedings as foreign main proceedings under 11 U.S.C. §§ 1502, 1515, 1517(a), and (b)(1) of the Bankruptcy Code, or, in the alternative, as foreign nonmain proceedings under 11 U.S.C. § 1517(b)(2) of the Bankruptcy Code;

(ii)   recognizing the JOLs as the foreign representatives of the Funds under 11 U.S.C. §§ 101(24) and 1517(a)(2) of the Bankruptcy Code;

(iii)    permitting the Foreign Representatives, pursuant to 11 U.S.C. §§ 542, 1507, 1520 and 1521 of the Bankruptcy Code, to examine witnesses, take evidence, and seek the production of documents concerning the assets, affairs, rights, obligations, or liabilities of the Funds; and

(iv)    granting such other and further relief as the Court may deem just and proper.[2]

## PRELIMINARY STATEMENT

1.    The Funds subject to the Cayman Proceedings were at all times organized under Cayman Islands law and have always maintained a registered office in the Cayman Islands.

2.    The Funds are in official liquidation in the Cayman Islands in front of the Grand Court pursuant to the Supervision Orders issued on February 16, 2024 (SPI) and June 10, 2024 (ICA and IPA) by the Grand Court which specifically authorizes the Foreign Representatives, as joint official liquidators, to "seek relief under Chapter 15 of Title 11 of the United States Bankruptcy Code, and to take such steps arising in connection therewith that the JOLs may consider appropriate."

3.    Furthermore, the Supervision Order for SPI, issued in February 2024, specifically requests that the "Courts of the United States of America lend their aid and assistance to the Grand Court and to the JOLs in their efforts to achieve an orderly liquidation of SPI." The Supervision Order for SPI also authorizes SPI to present winding-up petitions for ICA and IPA.

4.    Prior to the entry of the Supervision Orders, the Funds appointed the respective JOLs as joint voluntary liquidators, pursuant to written resolutions (together, the "**Resolutions**").

5.    Since their appointment as joint voluntary liquidators, the Foreign Representatives' efforts to facilitate and direct the Cayman Proceedings include, but are not limited to: (i) filing and publishing all required notices and consents, including with the Cayman Islands' Register of

---

[2] The relief requested in this Petition is without prejudice to any additional relief the Foreign Representatives may request.

Companies and the *Cayman Islands Gazette*; (ii) filing petitions with the Grand Court for their appointment as joint official liquidators and the court supervision of the winding up of the Funds; (iii) liaising and providing notices with stakeholders, banks, custodians, and other interested parties, including SPI's shareholders and directors; (iv) collecting and reviewing the Funds' books and records and conducting investigations in relation to potential assets and liabilities; (v) receiving and reviewing the Funds' financial statements to determine their solvency, or lack thereof; (vi) holding meetings of creditors of the Funds; (vii) drafting reports to the creditors of the Funds and the Grand Court; (viii) corresponding with liquidators of third party funds in which the Funds had invested; (ix) performing statutory obligations under the Companies Act, such as attempting to obtain statements of affairs; and (x) taking steps to establish and convene a liquidation committee.

6.      These wind down efforts proceed entirely from the Cayman Islands, where the Foreign Representatives reside.

7.      As set forth below and in the Declarations, the Foreign Representatives each meet the Bankruptcy Code's definition of a "foreign representative," the Cayman Proceedings satisfies the Bankruptcy Code's definition of a "foreign proceeding," and because the Funds' center of main interests is in the Cayman Islands, the Cayman Proceedings are entitled to recognition as a "foreign main proceeding."  In the alternative, because the Funds' maintained nontransitory activity in the Cayman Islands, the court should recognize the Cayman Proceedings as "foreign nonmain proceedings."  Finally, the Petition complies with section 1515 of the Bankruptcy Code.

8.      Accordingly, the Foreign Representatives respectfully submit that the Cayman Proceedings should be recognized by this Court as a "foreign main proceeding" under section

1517(b)(1) of the Bankruptcy Code, or, in the alternative, as a "foreign nonmain proceeding" under section 1517(b)(2) of the Bankruptcy Code.

9. First, the Foreign Representatives are "person[s]," as contemplated in subsections 101(24) and 101(41) of the Bankruptcy Code and were duly appointed by the Resolutions as the joint voluntary liquidators of the Funds and later appointed by the Grand Court as joint official liquidators of the Funds, which appointment was endorsed and sealed by the Grand Court as reflected in the Supervision Orders. The Supervision Orders allow the Foreign Representatives to take the necessary steps they deem appropriate, including seeking recognition in jurisdictions outside of the Cayman Islands, including under Chapter 15 of the Bankruptcy Code.

10. Second, the Cayman Proceedings are each a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code because the Cayman Proceedings constitute collective judicial proceedings conducted in the Cayman Islands under the law related to insolvency or debt adjustment (*i.e.*, the Companies Act and the CWR), and the assets and affairs of the Funds are subject to supervision by the Grand Court for the purpose of reorganization or liquidation. Additionally, the Cayman Proceedings are each a "foreign main" proceeding because section 1516(c) of the Bankruptcy Code presumes that the Funds' center of main interests is in the Cayman Islands. The Funds are entitled to that presumption here because the Funds are Cayman Islands-registered entities that presently and have always maintained registered offices in the Cayman Islands, where the Grand Court has taken jurisdiction over the Cayman Proceeding.

11. Third, the Petition complies with section 1515 of the Bankruptcy Code. Specifically, as required by section 1515(b) of the Bankruptcy Code, the Petition is accompanied by copies of the Supervision Orders. Additionally, in accordance with section 1515(c) of the Bankruptcy Code, the Foreign Representatives filed a statement with the Petition identifying the

Cayman Proceedings as the only proceedings concerning the Funds and stating that there are no other pending foreign proceedings known to the Foreign Representatives concerning the Funds. Further, as required by section 1515(d) of the Bankruptcy Code, all documents provided pursuant to section 1515(b) of the Bankruptcy Code are in English.  Finally, as required by Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure, the Foreign Representatives filed a statement identifying that the Funds are not presently involved in pending litigation in the United States.

12.     Fourth, the Foreign Representatives have made a showing that ancillary relief under 11 U.S.C. §§ 150 and 1521 is proper because the Supervision Orders authorize the Foreign Representatives, pursuant to the Companies Act and the CWR, to undertake an investigation of the Funds and the circumstances that led to their apparent insolvency.  In particular, the Foreign Representatives request discovery that centers on, *inter alia*, the potential mismanagement of the Funds and the disappearance of monies loaned by the Funds, is essential to a comprehensive and complete investigation of the Funds' assets and affairs.  Furthermore, the requested discovery will better enable the Foreign Representatives to evaluate litigation claims that may be pursued, including in the Cayman Islands and the United States, which could result from the discovery of the recipient of the Funds' loans and any subsequent transfers.

13.     In sum, all of the conditions to the entry of an order recognizing the Cayman Proceedings as foreign main proceedings under the Bankruptcy Code have been satisfied.

14.     Recognition of the Cayman Proceedings under chapter 15 of the Bankruptcy Code will serve the exact purpose of its enactment by ensuring that the Cayman Proceedings continue in a fair, efficient, uninterrupted, and centralized manner with the goal of maximizing the value of the Funds' remaining assets for the benefit of all stakeholders.  The Court should enter an Order recognizing the Cayman Proceedings as foreign main proceedings.

5

15.     In the alternative, because the Funds' maintained nontransitory activity in the Cayman Islands, the court should recognize the Cayman Proceedings as "foreign nonmain proceedings."  As noted above, the Funds are incorporated under Cayman Islands law and have always maintained registered offices there.  In addition, throughout their existence, the Funds have engaged in business with law firms and other service providers based in the Cayman Islands.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1334 and 1501.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

17.     The Foreign Representatives confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by this Court in connection with this Petition to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

18.     This case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of the Petition, as required by section 1515 of the Bankruptcy Code.

19.     As discussed in further detail below, venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1410(1).

20.     The statutory predicates for the relief requested herein are sections 1504, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## FACTUAL BACKGROUND

### I.    The Funds' Formation and Management

#### A.    SPI's Formation and Management

21.    On March 16, 2016, SPI was incorporated as an exempted segregated portfolio company under the laws of the Cayman Islands with registration number 309606. *Griffin Declaration, ¶ 12.*

22.    SPI is a "regulated mutual fund" for the purposes of the Mutual Funds Act (2021 Revision) and has been registered with the Cayman Islands Monetary Authority ("**CIMA**") as a mutual fund since April 21, 2016, with reference number 1291371. *Griffin Declaration*, ¶ 13.

23.    Prior to the voluntary liquidation, SPI maintained a registered office at c/o Apex Fund Services (Cayman) Ltd., 3rd Floor, Citrus Grove, 106 Goring Avenue, P.O. Box 10085, Grand Cayman, KY1-1001, Cayman Islands. *Griffin Declaration*, ¶ 14.

24.    Since the voluntary liquidation, SPI has maintained a registered office at FTI Consulting (Cayman) Ltd., the employer of the Foreign Representatives, at Suite 3206, 53 Market Street, Camana Bay, PO Box 30613, Grand Cayman KY1-1203, Cayman Islands.  *Griffin Declaration*, ¶ 15.

25.    SPI has one active segregated portfolio, SPI All Yields Fund (AYF) SP ("**SPI AYF**"), established under Section 216 of the Companies Act in or around March 5, 2017.  SPI launched SPI AYF on or around October 24, 2017.  *Griffin Declaration*, ¶ 16.[3]

26.    SPI and its segregated portfolios are governed by an Amended and Restated Memorandum and Articles of Association (the "**SPI Articles**").  Pursuant to the SPI Articles, SPI's

---

[3] SPI has two further segregated portfolios: SPI Capital Preservation Fund SP, which the SPI Liquidators understand was terminated by the directors of SPI following written resolutions of the directors of SPI dated August 20, 2021, and SPI Yield Enhancement Fund SP, which the SPI Liquidators believe currently has no investors or assets. *Griffin Declaration*, ¶ 17.

operations were primarily governed by the Companies Act. To that end, SPI's operations were largely unrestricted except as limited by the laws of the Cayman Islands. *Griffin Declaration*, ¶ 17.

27.     SPI has an authorized share capital of $50,000.00 divided into 100 voting non-participating management shares ("**SPI Management Shares**") and 4,999,999 non-voting redeemable participating shares ("**SPI Participation Shares**"). *Griffin Declaration*, ¶ 18.

28.     SPI offered the SPI Participation Shares pursuant to a Private Placement Memorandum (as amended, the "**SPI PPM**"), which was governed by the laws of the Cayman Islands. *Griffin Declaration*, ¶ 19.

29.     The 100 SPI Management Shares were held by SPI's then-investment manager until April 1, 2022, when they were transferred to Lars Dennis Klemming ("**Klemming**"), who, upon information and belief, is based in Florida. *Griffin Declaration*, ¶ 20.

30.     Klemming is the chairman of a group of investment entities known as the Prudent Group ("**Prudent**"). *Griffin Declaration*, ¶ 21.

31.     On or around November 15, 2023, Klemming transferred the SPI Management Shares to Andreas Schindler, Alfred Neimke, and Gareth Simon Williams ("**Williams**," and collectively, the "**SPI Voting Shareholders**"). *Griffin Declaration*, ¶22.

**B.     ICA's Formation and Management**

32.     On April 29, 2020, ICA was incorporated as an exempted company with limited liability under the laws of the Cayman Islands, with registration number 362570. *Griffin Declaration*, ¶ 23.

33.     Prior to the voluntary liquidation, ICA maintained a registered office at c/o Zedra Trust Company (Cayman) Limited, 23 Lime Tree Bay Avenue, P.O. Box 10240, Grand Cayman KY1-1002, Cayman Islands. *Griffin Declaration*, ¶ 24.

34.     Since the voluntary liquidation, ICA has maintained a registered office at FTI Consulting (Cayman) Ltd., the employer of the Foreign Representatives, at Suite 3206, 53 Market Street, Camana Bay, PO Box 30613, Grand Cayman KY1-1203, Cayman Islands.  *Griffin Declaration*, ¶ 25.

35.     ICA is governed by a Memorandum and Articles of Association adopted on April 29, 2020 (the "**ICA Articles**").  Pursuant to the ICA Articles, ICA's operations were primarily governed by the Companies Act.  To that end, ICA's operations were largely unrestricted except as limited by the laws of the Cayman Islands. *Griffin Declaration*, ¶ 26.

36.     DDM Corporate Management Ltd. ("**DDM**") – a Cayman Islands-based service provider – subscribed to the lone ordinary share of ICA, which DDM immediately transferred on April 29, 2020 to Klemming. On or around August 10, 2020, Klemming transferred his one ordinary share to Cayman Opportunity Investment Manager ("**Cayman Opportunity**"), who became the sole shareholder of ICA. *Griffin Declaration*, ¶ 27.

**C.     IPA's Formation and Management**

37.     On November 2, 2020, IPA was incorporated as an exempted company with limited liability under the laws of the Cayman Islands, with registration number 367986. *Griffin Declaration*, ¶ 28.

38.     IPA is governed by a Memorandum and Articles of Association adopted on November 2, 2020 (the "**IPA Articles**").  Pursuant to the IPA Articles, IPA's operations were primarily governed by the Companies Act.  To that end, IPA's operations were largely unrestricted except as limited by the laws of the Cayman Islands.  *Griffin Declaration*, ¶ 29.

39.     Prior to the voluntary liquidation, IPA maintained a registered office at c/o Zedra Trust Company (Cayman) Limited, 23 Lime Tree Bay Avenue, P.O. Box 10240, Grand Cayman KY1-1002, Cayman Islands. *Griffin Declaration*, ¶ 30.

40.     Since the voluntary liquidation, IPA has maintained a registered office at FTI Consulting (Cayman) Ltd., the employer of the Foreign Representatives, at Suite 3206, 53 Market Street, Camana Bay, PO Box 30613, Grand Cayman KY1-1203, Cayman Islands.  *Griffin Declaration*, ¶ 31.

41.     DDM subscribed to the lone ordinary share of IPA. On or around November 13, 2020, DDM transferred its one ordinary share to Cayman Opportunity, who became the sole shareholder of IPA. *Griffin Declaration*, ¶ 32.

## II.    The Funds' Intercompany Loans and the Loans to Sinai Holdings

### A.    The SPI-ICA Loan

42.     On or about December 1, 2020, SPI – on behalf of SPI AYF – entered into a credit facility with ICA pursuant to which SPI agreed to loan ICA up to $100 million (as amended, the "**SPI-ICA Loan**"). *Griffin Declaration*, ¶ 33.

43.     The proceeds of the SPI-ICA Loan were permitted to be used for the specific purpose of facilitating financings in the healthcare sector. *Griffin Declaration*, ¶ 34.

44.     The full outstanding loan balance was fully repayable at the end of the term of the SPI-ICA Loan.  The SPI-ICA Loan was not revolving, and any amount repaid to SPI could not be re-borrowed. *Griffin Declaration*, ¶ 35.

45.     The SPI-ICA Loan was governed by the laws of the Cayman Islands and granted its courts exclusive jurisdiction. *Griffin Declaration*, ¶ 36.

46.     The Foreign Representatives understand that the proceeds of the SPI-ICA Loan were to be ultimately disbursed to an account held by ICA in the Cayman Islands. *Griffin Declaration*, ¶ 37.

### B.    The AlphaNotes-ICA Loan

47.    SPI also invested in ICA via an intermediary entity, AlphaNotes ETP DAC ("**AlphaNotes**"). AlphaNotes and ICA entered into a loan agreement ("**AlphaNotes-ICA Loan**") in or around August 10, 2020, pursuant to which AlphaNotes would provide loans to ICA. The funds for these loans were generated from the sale by AlphaNotes of zero coupon promissory notes to SPI. *Griffin Declaration*, ¶ 38.

48.    The full outstanding loan balance was fully repayable at the end of the term of the AlphaNotes-ICA Loan.  The AlphaNotes-ICA Loan was not revolving, and any amount repaid to SPI could not be re-borrowed. *Griffin Declaration*, ¶ 39.

49.    The proceeds of the AlphaNotes-ICA Loan were permitted to be used for the specific purpose of facilitating financings in the healthcare sector. *Griffin Declaration*, ¶ 40.

50.    The AlphaNotes-ICA Loan was governed by the laws of the Cayman Islands and granted its courts exclusive jurisdiction. *Griffin Declaration*, ¶ 41.

51.    The Foreign Representatives understand that the proceeds of the AlphaNotes-ICA Loan were to be ultimately disbursed to an account held by ICA in the Cayman Islands. *Griffin Declaration*, ¶ 42.

52.    The AlphaNotes-ICA Loan was assigned to SPI AYF in or around September 15, 2023 (the "**SPI-AlphaNotes Assignment**"). *Griffin Declaration*, ¶ 43.

### C.    The ICA-Sinai Holdings Loan

53.    On or about August 12, 2020, Klemming and his son Niklas – on behalf of ICA – entered into a loan agreement with Sinai Holdings, LLC ("**Sinai**") in which ICA loaned Sinai up to $100 million (as amended, the "**ICA – Sinai Loan**"). *Griffin Declaration*, ¶ 44.

54.     Sinai is a limited liability company organized under the laws of Florida and that maintains a principal place of business at 1111 Kane Concourse, 518 Bay Road, Bay Harbor Islands, Florida 33154. *Griffin Declaration*, ¶ 45.

55.     Sinai is the beneficial owner of numerous medical companies, including pharmacies, surgical practices, and infusion treatment clinics, all located in Florida. *Griffin Declaration*, ¶ 46.

56.     The ICA-Sinai Loan was signed by Klemming and Niklas (who is also based in Florida), on behalf of ICA, and Jacob Gitman ("**Gitman**") and Yulia Kislyuk ("**Kislyuk**") as President and Manager of Sinai (together, the "**Sinai Directors**"), respectively. *Griffin Declaration*, ¶ 47.

57.     Gitman is based in Florida.  On information and belief, Kislyuk is also based in Florida. *Griffin Declaration*, ¶ 48.

58.     Pursuant to the terms of the ICA-Sinai Loan, ICA agreed to finance transactions in account receivables. *Griffin Declaration*, ¶ 49.

**D.     The SPI-IPA Loan**

59.     On or about January 1, 2021, SPI – on behalf of SPI AYF – entered into a credit facility with IPA in which SPI loaned IPA up to $100 million (as amended, the "**SPI-IPA Loan**"). *Griffin Declaration*, ¶ 50.

60.     The proceeds of the SPI-IPA Loan were permitted to be used for the specific purpose of facilitating financings in the healthcare sector. *Griffin Declaration*, ¶ 51.

61.     The full outstanding loan balance was fully repayable at the end of the term of the SPI-IPA Loan.  The SPI-IPA Loan was not revolving, and any amount repaid to SPI could not be re-borrowed. *Griffin Declaration*, ¶ 52.

62.    The SPI-IPA Loan was governed by the laws of the Cayman Islands and granted its courts exclusive jurisdiction. *Griffin Declaration*, ¶ 53.

63.    The Foreign Representatives understand that the proceeds of the SPI-IPA loan were to be ultimately disbursed to an account held by IPA in the Cayman Islands. *Griffin Declaration*, ¶ 54.

### E.    The IPA-Sinai Holdings Loan

64.    On or about November 21, 2021, Klemming and his son Niklas – on behalf of IPA – entered into a loan agreement with Sinai in which IPA loaned Sinai up to $100 million ("**IPA-Sinai Loan**"). *Griffin Declaration*, ¶ 55.

65.    The IPA-Sinai Loan was signed by Klemming and his son, on behalf of IPA, and Gitman and Leonid Slobodskoy ("**Slobodskoy**") as President and Manager of Sinai, respectively. *Griffin Declaration*, ¶ 56.

66.    On information and belief, Slobodskoy is based in Florida. *Griffin Declaration*, ¶ 57.

67.    Pursuant to the terms of the IPA-Sinai Loan, IPA agreed to finance transactions in account receivables. *Griffin Declaration*, ¶ 58.

### III.    Concerns Relating to the Operations of the Funds

### A.    Falsification of SPI's Financial Statements

68.    PricewaterhouseCoopers ("**PwC**") acted as SPI's auditor until its resignation on September 21, 2021. *Griffin Declaration*, ¶ 59.

69.    On July 30, 2021, PwC issued a report on its audit of SPI's 2020 financial statements. However, PwC could not issue an unqualified audit opinion for SPI because, *inter alia*, as of December 31, 2020, SPI AYF held an investment in two investee funds that were valued at

$6.9 million and $4.8 million, respectively, both of which PwC could not obtain sufficient audit evidence to confirm their respective valuations. *Griffin Declaration*, ¶ 60.

70.     According to the January 31, 2022 Winding Up Petition of SPI (the "**SPI Winding Up Petition**"), throughout August and September 2021, Marc-Andre Pepin, the principal of SPI's former investment manager Invescap, sent several emails to investors of SPI with a doctored version of SPI's financial statements. The doctoring included, *inter alia*, the removal of the qualified opinion and replacing it with an unqualified opinion, the removal of the section discussing PwC's qualifications, and the removal of the original PwC signature and replacing that with the PwC signature that appeared in SPI's 2019 financial statements. *Griffin Declaration*, ¶ 61.

71.     As detailed further in the SPI Winding Up Petition, on becoming aware of Mr Pepin's actions, on September 22, 2021, the directors of SPI resolved to suspend share subscriptions, redemptions, and redemption payments with immediate effect and, subsequently, the calculation of the net asset value ("**NAV**") in order to allow SPI time to investigate and determine appropriate next steps. *Griffin Declaration*, ¶ 62.

72.     On October 3, 2021, three employees of FFP Limited (Cayman) (collectively, the "**FFP Directors**") were appointed as directors of SPI. *Griffin Declaration*, ¶ 63.

**B.      The Inflation and Unreliability of SPI's Net Asset Value**

73.     The FFP Directors engaged a financial consultancy group to investigate SPI's financial health, structure, and processes. The FFP Directors developed significant concerns as to the reliability of SPI's NAV and formed the opinion that it would be in the interest of stakeholders for SPI to be wound up under the supervision of the Grand Court. *Griffin Declaration*, ¶ 64.

74.     They were likewise concerned that 96.9% of the reported fair market value of SPI AYF derived from direct or indirect investments in entities controlled by the Prudent Group and/or its chairman, Klemming. *Griffin Declaration*, ¶ 65.

75.     With respect to SPI AYF's investments in Prudent Group, 76.1% of the reported fair market value of SPI AYF's assets as of September 30, 2021 were related to the ICA-Sinai Loan, AlphaNotes-ICA Loan and the IPA-Sinai Loan.  SPI AYF did not receive payments of interest or other returns relating to its indirect exposure to Sinai's receivables.  *Griffin Declaration*, ¶ 66.[4]

76.     The SPI Winding Up Petition indicated the FFP Directors were also concerned that the fair market value of SPI's interest in the ICA-Sinai Loan, AlphaNotes-ICA Loan and the IPA-Sinai Loan was significantly less than previously reported.  *Griffin Declaration*, ¶ 67.[5]

## IV.     The Funds Enter Official Liquidation in the Cayman Islands

### A.     The Supervision Petitions and the Voluntary Liquidation of SPI

77.     On November 17, 2023, the SPI Voting Shareholders placed SPI into voluntary liquidation (the "**SPI Resolution**") and the SPI Liquidators were appointed as joint voluntary liquidators (collectively, the "**SPI JVLs**"). *Griffin Declaration*, ¶ 68.

78.     Soon after, the SPI Liquidators, among other things: (i) notified the Cayman Islands' Registrar of Companies of their appointment as the SPI JVLs; (ii) informed CIMA of their appointment; (iii) published a notice of the SPI Liquidators' appointment in the *Cayman Islands Gazette*; (iv) notified SPI's banks and custodians to change account signatories; (v) collected the books and records of SPI; (vi) retained Cayman Islands legal counsel for the purpose of the winding-up of SPI; (vii) notified SPI's creditors and investors of their appointment; and (viii) changed SPI's registered office to their office in the Cayman Islands. *Griffin Declaration*, ¶ 69.

---

[4] Instead, interest accrued on SPI AYF's exposure to IPA and ICA and was reported in the NAV statement.  That interest, which was not being paid, represented a large part of the reported investment performance of SPI AYF. *Griffin Declaration*, ¶ 58.
[5] On January 31, 2022, the FFP Directors filed a petition with the Grand Court, pursuant to section 92(e) of the Companies Act, to wind up SPI.  The following day, on February 1, 2022, the FFP Directors were removed as directors and replaced by Klemming and Williams, who allegedly believed that a winding up should not have been pursued because SPI was a "viable" fund. Griffin Declaration, ¶ 59.

79.     As a result of the directors of SPI not providing a declaration of solvency, as required under CWR O.13 r.1, the SPI Liquidators filed an application pursuant to, *inter alia*, Section 124(1) of the Companies Act to bring the voluntary liquidation of the Funds under the supervision of the Grand Court. *Griffin Declaration*, ¶ 70.

**B.     The Grand Court Issues the SPI Supervision Order**

80.     On December 20, 2023, the SPI Liquidators petitioned the Grand Court to place SPI into official liquidation and to appoint them as joint official liquidators of SPI (the "**SPI Supervision Petition**"). *Griffin Declaration*, ¶ 71.

81.     On February 16, 2024, the Grand Court granted the SPI Supervision Petition and issued a supervision order (the "**SPI Supervision Order**") pursuant to which, *inter alia*, the winding up of SPI shall continue under the supervision of the Grand Court (pursuant to Section 124(1) of the Companies Act) and the appointment of Messrs. Morrison, Griffin, and Gow as the SPI Liquidators. *Griffin Declaration*, ¶ 72.

82.     As fiduciaries and officers of the Grand Court, the SPI Liquidators are duly authorized and empowered by the Grand Court to investigate SPI's affairs, to administer the distribution of its assets, and to act as the duly authorized representatives of SPI. *Leontsinis Declaration*, ¶ 41.

83.     The SPI Supervision Order authorizes the SPI Liquidators to "take any such action in the United States … as may be necessary or desirable to obtain recognition of the [SPI Liquidators] and/or their appointment and/or powers, and to make application to the courts of the United States for that purpose." *Leontsinis Declaration*, ¶ 38.

84.     Furthermore, the SPI Supervision Order authorizes the SPI Liquidators to "seek relief under Chapter 15 of Title 11 of the United States Bankruptcy Code, and to take such steps

arising in connection therewith that the [SPI Liquidators] may consider appropriate." (emphasis added). *Leontsinis Declaration*, ¶ 37.

85.     Moreover, the SPI Liquidators are empowered, as agents of SPI, to collect, take possession, retain, manage and realize SPI's property for the benefit of all stakeholders. *Leontsinis Declaration*, ¶ 31.

86.     The SPI Supervision Order also sets out the powers that the SPI Liquidators can exercise without the Grand Court's sanction under Schedule 3, Part I of the Companies Act. *Leontsinis Declaration*, ¶ 39.

87.     For example, the SPI Supervision Order permits the SPI Liquidators to file similar winding up applications for ICA and IPA at the Grand Court, and also to engage attorneys and other professionals within both the Cayman Islands and the United States. *Leontsinis Declaration*, ¶¶ 36, 40.

88.     Finally, Schedule 3, Part II of the Companies Act provides that the SPI Liquidators are permitted to exercise the following powers with the Grand Court's sanction, including, among others:

    a.  The power to take possession of, collect and get in the property of the company and for that purpose to take all such proceedings as that person considers necessary.

    b.  The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.

    c.  The power to convene meetings of creditors and contributories.

*Leontsinis Declaration*, ¶ 33.

### C.    The Grand Court Enters the ICA and IPA Supervision Orders

89.    In March 2024, the SPI Liquidators contacted the sole shareholder, Cayman Opportunity, and the directors of ICA and IPA regarding, among other things the IPA-SPI Loan and ICA-SPI Loan. *Griffin Declaration*, ¶ 73.

90.    Cayman Opportunity agreed to transfer its shareholding in IPA and ICA to SPI in accordance with the terms of the Articles of Association, which are governed by Cayman Islands law. *Griffin Declaration*, ¶ 74.

91.    On April 9, 2024, the SPI Liquidators – as authorized by Section 116(c) of the Companies Act – placed ICA and IPA into voluntary liquidation and appointed the ICA and IPA Liquidators as voluntary liquidators (the "**ICA-IPA Resolutions**"). *Griffin Declaration*, ¶ 75.

92.    Soon after, the ICA and IPA Liquidators (as JVLs), among other things: (i) notified the Cayman Islands' Registrar of Companies of their appointment as the ICA and IPA JVLs; (ii) published a notice of the ICA- and IPA Liquidators' appointment in the *Cayman Islands Gazette*; (iii) notified ICA and IPA's banks and custodians to change account signatories; (iv) collected the books and records of ICA and IPA; (v) retained Cayman Islands legal counsel for the purpose of the winding-up of ICA and IPA; (vi) notify ICA and IPA's creditors and investors of their appointment; and (vii) changed ICA and IPA's registered office to their office in the Cayman Islands. *Griffin Declaration*, ¶ 76.

93.    On May 14, 2024, the ICA and IPA Liquidators (as JVLs), petitioned the Grand Court to place ICA and IPA into official liquidation and to appoint them as joint official liquidators of ICA and IPA (the "**ICA-IPA Supervision Petition**"). *Griffin Declaration*, ¶ 77.

94.    On June 10, 2024, the Grand Court granted the ICA-IPA Supervision Petition and issued a supervision order (together, the "**ICA-IPA Supervision Orders**") pursuant to which, *inter alia*, the winding up of ICA and IPA shall continue under the supervision of the Grand Court

(pursuant to Section 124(1) of the Companies Act) and the appointment of Mr. Griffin and Ms. Plamondon as the ICA and IPA Liquidators. *Griffin Declaration*, ¶ 78.

95.     Like the SPI Liquidators, as fiduciaries and officers of the Grand Court, the ICA and IPA Liquidators are duly authorized and empowered by the Grand Court to investigate ICA and IPA's affairs, to administer the distribution of its assets, and to act as the duly authorized representatives of ICA and IPA. *Leontsinis Declaration*, ¶ 41.

96.     The ICA-IPA Supervision Orders authorizes the ICA and IPA Liquidators to "<u>seek relief under Chapter 15 of Title 11 of the United States Bankruptcy Code, and to take such steps arising in connection therewith that the [ICA-IPA Liquidators] may consider appropriate</u>." (emphasis added). *Leontsinis Declaration*, ¶ 37.

97.     Moreover, the ICA and IPA Liquidators are empowered, as agents of ICA and IPA, to collect, take possession, retain, manage and realize the property for the benefit of all stakeholders. *Leontsinis Declaration*, ¶ 31.

98.     The ICA-IPA Supervision Orders also sets out the powers that the SPI Liquidators can exercise without the Grand Court's sanction under Schedule 3, Part I of the Companies Act. *Leontsinis Declaration*, ¶ 38.

99.     For example, the ICA-IPA Supervision Orders permits the ICA and IPA Liquidators to engage attorneys and other professionals within both the Cayman Islands and the United States. *Leontsinis Declaration*, ¶¶ 36, 40.

100.     Finally, the ICA and IPA Liquidators may exercise the powers set forth in Schedule 3, Part II of the Companies Act set forth above. *Leontsinis Declaration,* ¶ 33.

**V.     The Progress of the Cayman Proceedings**

101.     Following the issuance of the Supervision Orders, the Foreign Representatives continued to work from the Cayman Islands to wind-down the Funds for the ultimate benefit of

their creditors and stakeholders. *Griffin Declaration*, ¶ 79.

102.    To that end, the Foreign Representatives have taken various steps required under the Companies Act and the CWR. *Griffin Declaration*, ¶ 80.

103.    These steps include, among others, (i) filing and publishing all required notices and consents, including with the Cayman Islands' Register of Companies and the *Cayman Islands Gazette*; (ii) filing petitions with the Grand Court for their appointment as joint official liquidators and the court supervision of the winding up of the Funds; (iii) liaising and providing notices with stakeholders, banks, custodians, and other interested parties, including SPI's shareholders and directors; (iv) collecting and reviewing the Funds' books and records and conducting investigations into their assets and liabilities; (v) receiving and reviewing the Funds' financial statements to determine their solvency, or lack thereof; (vi) holding meetings of creditors of the Funds; (vii) drafting reports to the creditors of the Funds and the Grand Court; (viii) corresponding with liquidators of third party funds in which the Funds had invested; (ix) performing statutory obligations such as determining the currency of liquidation and attempting to obtain statements of affairs; (x) taking steps to establish and convene a liquidation committee; and (xi) issuing, for the avoidance of any doubt, a default letter to Sinai. *Griffin Declaration*, ¶¶ 81-82.

## ARGUMENT

## I.    The Cayman Proceedings Should be Recognized Under Chapter 15

104.    This Petition should be granted under chapter 15 because: (1) the Cayman Proceedings are each a "foreign proceeding"; (2) the Cayman Proceedings were commenced by

the Foreign Representatives, who are duly authorized "foreign representatives" of the Funds; and (3) all the required supporting documentation has been filed.[6]

### A.      Chapter 15 of the Bankruptcy Code: Background and Purpose

105.    Congress added chapter 15 to the Bankruptcy Code via title VII of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  Pub. L. No. 109-8, § 801 (2005); *see* 8 COLLIER ON BANKR. ¶ 1501.01 (16th ed.).  Chapter 15 encourages "cooperation between the United States and foreign countries with respect to transnational insolvency cases."  *Id.*

106.    Chapter 15 "represents a nearly verbatim enactment of the Model Law on Cross–Border Insolvency (the 'Model Law') promulgated by the United Nations Commission on International Trade Law … in 1997."  *In re British Am. Ins. Co. Ltd.*, 488 B.R. 205, 212 (Bankr. S.D. Fla. 2013).

107.    "International uniformity is a primary goal of the Model Law and thus of chapter 15."  *Id.*  Indeed, one of the "main aims" of Chapter 15 is "to provide effective mechanisms for dealing with cases of cross-border insolvency."  *Al Zawawi*, 97 F.4th at 1255 (citing 11 U.S.C. § 1501(a)).

108.    "Fundamentally procedural in nature … chapter 15 allows a foreign representative to petition the bankruptcy court for recognition of a foreign insolvency proceeding and creates an ancillary proceeding to assist the foreign proceeding."  *In re Zawawi*, 634 B.R. 11, 16 (M.D. Fla.

---

[6] Unlike other Circuits, the Eleventh Circuit holds that the Section 109(a) of the Bankruptcy Code does not apply in Chapter 15 cases.  *See In re Al Zawawi¸* 97 F.4th 1244, 1255 (11th Cir. 2024).  Section 109(a) provides that "only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor" under the Bankruptcy Code."  11 U.S.C. § 109(a).  In *Al Zawawi*, the Eleventh Circuit, relying on precedents interpreting the Chapter 15 predecessor statute, concluded that "based on the definition of 'foreign proceeding' in § 101(12), as informed by the purpose of Chapter 15, debtor eligibility under Chapter 1 is not a prerequisite for the recognition of a foreign proceeding under Chapter 15."  *Id.* (citing *In re Goerg*, 844 F.2d 1562, 158 (11th Cir. 1988)). Even if the section 109 requirement applied, it would be satisfied here because the Foreign Representatives have property in this District in the form of an attorney retainer held in an account of Holland & Knight LLP in the State of Florida. *Griffin Declaration*, ¶ 82.

2022) (citations omitted); *see also In re B.C.I Fins. Pty Ltd.*, 583 B.R. 288, 292 (Bankr. S.D.N.Y. 2018) (noting that Chapter 15 and the Model Law "are designed to optimize disposition of international insolvencies by facilitating appropriate access to the court system of a host country (the United States, in the case of Chapter 15) by a representative of an insolvency proceeding pending in a foreign country"); *In re Massa Falida do Banco Cruziero do Sul, S.A.*, 637 B.R. 675, 692-93 (Bankr. S.D. Fla. 2022) (noting that comity and deference to foreign courts is "particularly important in cross-border insolvencies") (citation omitted).

109.    Consequently, "Chapter 15 expresses a strong preference for providing assistance to foreign representatives in appropriate circumstances. *That congressional preference is not to be lightly disturbed.*" *In re Platinum Partners Value Arbitrage Fund L.P*, No. 18CV5176 (DLC), 2018 WL 3207119, at *4 (S.D.N.Y. June 29, 2018) (emphasis added).

110.    "Upon recognition, the foreign representative acquires a broad range of relief under Chapter 15." *Zawawi*, 634 B.R. at 16. This relief permits the foreign representative to protect the assets and value of entities in cross-border corporate insolvency proceedings. Chapter 15 likewise is designed to guarantee orderly, coordinated, and centralized administration of a foreign proceeding, as well as to avert impediments that could disrupt a foreign proceeding from achieving its purposes under applicable foreign law.

111.    Section 1517(a) of the Bankruptcy Code provides that, after a notice and hearing, subject to section 1506 of the Bankruptcy Code, an order recognizing a foreign proceeding shall be entered if:

(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;

(2) the foreign representative applying for recognition is a person or body; and

(3) the petition meets the requirements of section 1515.

22

*See also Zawawi*¸ 634 B.R. at 16.

112.    Provided the putative foreign representative meets the burden of proof, recognition is "mandatory if the requirements of Section 1517(a) are met."  *In re Oi Brasil Holdings Coöperatief U.S.*, 578 B.R. 169, 194 (Bankr. S.D.N.Y. 2017).

**B.    The Cayman Proceedings are Each a "Foreign Proceeding"**

113.    The Cayman Proceedings each satisfy the definition of "foreign proceeding" as required by section 1517(a)(1) of the Bankruptcy Code.

114.    Under Section 101(23) of the Bankruptcy Code, a "foreign proceeding" is defined as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."  11 U.S.C. § 101(23).

115.    In order to satisfy Section 101(23) of the Bankruptcy Code, the foreign proceeding in question must "(1) be collective in nature; (2) be judicial or administrative; (3) be pending in a foreign country; (4) be under a law relating to insolvency or adjustment of debt; (5) subject the assets and affairs of the debtor to the control and supervision of a foreign court; and (6) be for the purpose of reorganization or liquidation."  *In re British Am. Ins. Co. Ltd.*¸ 425 B.R. 884, 901 (Bankr. S.D. Fla. 2010).

116.    The Cayman Proceedings satisfy these elements.

117.    First, the Cayman Proceedings are "collective in nature" in that the liquidation process concerning the Funds is binding on all stakeholders.  A collective proceeding is "one that

considers the rights and obligations of all creditors." *Id.* at 902.[7]  In determining whether a particular foreign action is "collective," "it is appropriate to consider both the law governing the foreign action and the parameters of the particular proceeding, as defined in, for example, orders of a foreign tribunal overseeing the action." *Id.*  The Foreign Representatives satisfy this requirement because, in leading the winding up process as the court-appointed fiduciaries of the Funds, they must consider the interests of all parties and must treat them in an even-handed and fair manner, including the Funds' creditors, certain of which are located in the Cayman Islands, including SPI's former administrator. *See In re Ocean Rig UDW Inc.*, 570 B.R. 687, 701 (Bankr. S.D.N.Y. 2017) (a proceeding commenced under Part V of the Companies Act is a "collective judicial proceeding[]"); *In Re Ascot Fund Ltd.*, 603 B.R. 271, 278 (Bankr. S.D.N.Y. 2019) (same).

118.  Second, the Cayman Proceedings are each a "judicial" proceeding because the Foreign Representatives are all subject to the supervision of the Grand Court.  The Grand Court appointed the Foreign Representatives, and the Supervision Orders, as well as the Companies Act and the CWR, delineate both the powers that the Foreign Representatives may invoke with court sanction and without. *See British Am.*, 425 B.R. at 904-05 (proceedings are judicial when they are invoked pursuant to applicable law and resulting orders); *Ocean Rig*, 570 B.R. at 702 (that the liquidators were "subject to the control of the [Cayman] Court" indicates the liquidation in the Cayman Islands is a foreign judicial proceeding).  For example, the Supervision Orders each prohibit the commencement of any proceeding against the Funds without the sanction of the Grand Court, as set forth in Section 97 of the Companies Act.  Furthermore, the Grand Court supervises the Foreign Representatives and has jurisdiction to hear any disputes arising out of the Cayman

---

[7] A non-collective proceeding, by contrast, resembles a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor." *Id.* (citation omitted).

Proceedings, including with respect to the distribution of assets. *Ascot Fund*, 603 B.R. at 278 (that the "Cayman Proceeding is overseen by the Cayman Court" illustrates that it is a judicial proceeding for which recognition is proper); *Ocean Rig*, 570 B.R. at 700 (same).

119.    Third, the Cayman Proceedings occur in the Cayman Islands, a foreign country.

120.    Fourth, the Cayman Proceedings transpire under the auspices of the Companies Act, which is a statutory scheme "relating to insolvency or adjustment of debt." The Companies Act is such a statute because it is applicable to corporate insolvencies, including the Cayman Proceedings, and governs the resolution of any debts owed by or to the Funds, as overseen by the Grand Court. *See, e.g., British Am.*, 425 B.R. at 905 (foreign laws that require the court to consider the solvency and creditworthiness of entities constitute laws "relating to insolvency or adjustment of debt") *Ocean Rig*, 570 B.R. at 701.

121.    Fifth, the assets and affairs of the Funds are subject to the control or supervision of the Grand Court in an official liquidation such as this. For instance, the Foreign Representatives cannot exercise many of the powers of the Companies Act without sanction by the Grand Court, including the initiation or defense of an action on behalf of the Funds. The Foreign Representatives are also able to petition the Grand Court for additional relief as they continue the process of winding up the Funds. *See, e.g., British Am*, 425 B.R. at 905 (this factor satisfied when the foreign representative acts under the supervision of the foreign court).

122.    Finally, the Cayman Proceedings exists "for the purpose of reorganization or liquidation." Given the apparent insolvency of the Funds, or at the very least, the uncertainty as to the amount recoverable from the loans to Sinai, the primary impetus for the Cayman Proceedings is to administer the winding up of the Funds for the benefit of all interested parties.

123.     Importantly, courts routinely hold that insolvency proceedings under Cayman Islands law qualify as "foreign proceedings" under chapter 15 of the Bankruptcy Code, including proceedings involving limited companies such as the Funds.  *See, e.g., Ascot Fund*, 603 B.R. at 286 (recognizing official liquidation proceeding in front of the Grand Court and under the Companies Act); *Ocean Rig*, 570 B.R. at 707 (recognizing provisional liquidation in front of Grand Court and under the Companies Act as foreign proceeding); *In re Cayman Investment Funds Master SPC (in Official Liquidation)*, 24-12673-EPK (Bankr. S.D. Fla. July 24, 2024) (ECF No. 25); *In re Business Fin. Opportunities Fund (in Official Liquidation)*, No. 24-10577-pb (Bankr. S.D.N.Y.) (ECF No. 12); *In re Atom Holdings*, No. 23-1343-PDR (Bankr. S.D. Fla. June 30, 2023) (ECF No. 37); *In re Frontera Res. Caucasus Corp.*, 19-13418-mew (Bankr. S.D.N.Y. Jan. 21, 2020) (ECF No. 19); *In re Platinum Partners Value Arbitrage Fund (in Official Liquidation)*, 16-12282 (MG) (Bankr. S.D.N.Y. Nov. 23, 2016) (ECF No. 27).

124.     For these reasons, the Cayman Proceedings each constitute a "foreign proceeding" in satisfaction of 11 U.S.C. § 1517(a)(1).

## C.     The JOLs are the "Foreign Representatives" of the Funds

125.     A "foreign representative" that has been duly appointed and authorized in a foreign proceeding to administer the reorganization is a proper applicant for recognition of a foreign proceeding and may commence a chapter 15 case by filing a petition.  *See* 11 U.S.C. § 1515(a).

126.     The Bankruptcy Code defines a "foreign representative" as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."  11 U.S.C. § 101(24).[8]

---

[8] The "foreign representative" can be an individual.  *See Ascot Fund¸* 603 B.R. at 278 (citing 11 U.S.C. § 101(41)).

127.    The requirement that a foreign representative be authorized in a foreign proceeding is "not an onerous one."  *In re PT Bakrie Telecom Tbk*, 601 B.R. 707, 717 (Bankr. S.D.N.Y. 2019).

128.    First, for the reasons explained above, the Cayman Proceedings are each a "foreign proceeding."

129.    Second, the Foreign Representatives are individual persons, appointed and operating as the joint official liquidators of the Funds pursuant to the Companies Act, the CWR, and the Supervision Orders.  The Foreign Representatives, who are insolvency practitioners, and each reside in the Cayman Islands, are authorized to administer the assets and affairs of the Funds.

130.    Importantly, each of the Supervision Orders specifically authorizes the Foreign Representatives to "seek relief under Chapter 15 of Title 11 of the United States Bankruptcy Code, and to take such steps arising in connection therewith that the JOLs may consider appropriate." This unequivocal grant of authority is persuasive evidence that the JOLs should be considered "foreign representatives" is understood under Section 101(24) of the Bankruptcy Code. *See* 11 U.S.C. § 1516(a) ("If the decision [commencing the foreign proceeding] … indicates … that the person … is a foreign representative, the court is entitled to so presume."); *In re Culligan Ltd.*, No. 20-12912 (JLG), 2021 WL 2787926, at *9 (Bankr. S.D.N.Y. July 2, 2021) (citing 11 U.S.C. § 1516(a) in support of appointing Bermudan liquidators authorized by the foreign liquidation order as foreign representatives).[9]

131.    For these reasons, the Foreign Representatives squarely fall within the definition of section 101(24) of the Bankruptcy Code and should be recognized as the foreign representatives of the Funds.

---

[9] The SPI Supervision Order also specifically permits the SPI Liquidators to "take any such action in the United States … as may be necessary or desirable to obtain recognition of the [SPI Liquidators] and/or their appointment and/or powers, and to make application to the courts of the United States for that purpose."

### D.    The Foreign Representatives Have Submitted the Required Materials

132.    First, Section 1517(a)(3) incorporates section 1515 of the Bankruptcy Code, which provides that "[a] foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition."  11 U.S.C. § 1517(a)(3); *see British Am.*, 425 B.R. at 899 (setting out the Section 1515 requirements).

133.    The Foreign Representatives have filed a petition for recognition in this Court, in satisfaction of 11 U.S.C. § 1515(a).

134.    Second, pursuant to section 1515(b) of the Bankruptcy Code, a petition for recognition under Chapter 15 must be accompanied by one of the following:

(1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

(2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

(3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

135.    By application of section 1516 of the Bankruptcy Code, "[t]he court is entitled to presume that the documents submitted in support of the petition for recognition are authentic" and "[i]f the decision or certificate referred to in section 1515(b) indicates that the foreign proceeding is a foreign proceeding and that the person or body is a foreign representative, the court is entitled to so presume."  *See* 11 U.S.C. § 1516(a)-(b); *see also British Am.*, 425 B.R at 900 (acknowledging the presumptions set forth in section 1516 of the Bankruptcy Code).

136.    Bankruptcy Rule 1007(a)(4) mandates that, in addition to the documents required under section 1515, a foreign representative filing a petition for recognition under chapter 15 must file with the petition:

(i) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1, and

(ii) a list of foreign persons or bodies authorized to administer the foreign proceeding of the Foreign Debtor pursuant to Bankruptcy Rule 1007(a)(4), as well as a list of all parties to litigation pending in the United States to which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

137.    The Petition meets the requirements of section 1515(b) and Fed. R. Bankr. P. 1007(a)(4).  The Supervision Orders constitute decisions of the Grand Court commencing the Cayman Proceeding and appointing the JOLs as the foreign representatives authorized to bring the instant chapter 15 case.  *Ascot Fund*, 603 B.R. at 278 n. 8 (petitioner satisfies 11 U.S.C. § 1515 by providing a copy of the appointment order by the Grand Court, which is "acceptable evidence of the commencement and existence of the Cayman Proceeding and the appointment of the JOLs").

138.    Finally, the Griffin Declaration includes a corporate ownership statement, the list of the persons authorized to administer the Cayman Proceedings (only the Foreign Representatives) and confirms that the Funds are not involved in any litigation in the United States.

139.    Accordingly, the Foreign Representatives satisfy the requirements set forth in sections 1515 and 1517 of the Bankruptcy Code and Fed. R. Bankr. P. 1007(a)(4).  *See Culligan*, 2021 WL 2787926, at *10 (applying presumption towards authenticity in section 1516 and holding that foreign representative satisfies sections 1515 and 1517).

## II.    The Cayman Proceedings are Each a Foreign Main Proceeding

### A.    The COMI of the Funds is Presumed to be the Cayman Islands

140.    Section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding shall be recognized as a "foreign main proceeding" if, among other conditions, it is pending in the country where the debtor has its center of main interests ("**COMI**") as of the date of the petition

for recognition.  11 U.S.C. § 1502(4); *see In re Al Zawawi*, 637 B.R. 663, 668 n. 8 (Bankr. M.D. Fla. 2022); *British Am.*, 425 B.R. at 909 (noting that several other courts have likened COMI to the "principal place of business concept under United States law") (internal quotations omitted).[10]

141.    Absent evidence to the contrary, a debtor's registered office is presumed to be its COMI.  *See* 11 U.S.C. 1516(c); *see British Am.*, 425 B.R. at 908.  The legislative history of chapter 15 indicates that this presumption was "designed to make recognition as simple and expedient as possible" in cases, as here, where COMI is not controversial.  *See* H. Rep. 109-31 pt. 1, at 112-13 (2005).

142.    The Funds were each incorporated under the laws of the Cayman Islands, and since their organization, maintained a registered office in the Cayman Islands.  The Funds' registered office is currently the Foreign Representatives' office in the Cayman Islands.  This creates a presumption that the Cayman Islands is the COMI of the Funds.  *See* 11 U.S.C. § 1516(c).

**B.    The Section 1516 Presumption is Confirmed Because it is Objectively Ascertainable that the Funds' COMI is the Cayman Islands**

143.    In addition to the presumption set forth in 11 U.S.C. § 1516(c), courts in the Eleventh Circuit have developed a list of non-exclusive, but "widely adopted" factors that may be considered when determining COMI:

(1) the location of the debtor's headquarters;

(2) the location of those who actually manage the debtor;

(3) the location of the debtor's primary assets;

(4) the location of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or

---

[10] A debtor has only one COMI.  *See In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 79 (Bankr. S.D.N.Y 2011) ("[E]very entity has a center of main interests.").

(5) the jurisdiction whose law would apply to most disputes.

*British Am.*, 425 B.R. at 908-909 (quoting *In re Bear-Stearns High—Grade Structured Credit Strategies Master Fund, Ltd.¸* 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007)).  These are "not exclusive factors, nor must they all be met in each case."  *Id.* at 909; *see also Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry)*, 714 F.3d 127, 137 (2d Cir. 2013) (noting that these factors present a "helpful guide, but consideration of these is not required nor dispositive")

### C.    The Presumption is Confirmed Because it is Objectively Ascertainable that the Funds' COMI is the Cayman Islands

144.    Courts in the Eleventh Circuit also consider the "expectations of third parties with regard to the location of a debtor's COMI."  *British Am.*, 425 B.R. at 909.

145.    By applying the text of the statute, COMI should be determined "as of the date the Court rules on this issue."  *Id.* at 910.

146.    The presumption of COMI in the Funds' favor is further confirmed by the facts and circumstances set out in the Declarations, as the Foreign Representatives satisfy these factors, and thus, it is objectively ascertainable by third parties that the COMI of the Funds is the Cayman Islands.

147.    First, the Funds' headquarters is the Cayman Islands.  The Foreign Representatives are all based in the Cayman Islands, and they are conducting the Cayman Proceedings from the Funds' registered office in the Cayman Islands.  Furthermore, the books and records of the Funds are in the Foreign Representatives' possession.

148.    Second, the Cayman Proceedings are managed and directed from the Cayman Islands.  The Foreign Representatives' management and direction efforts to date (commencing soon after their appointment as voluntary liquidators) include, but are not limited to: (i) filing and publishing all required notices and consents, including with the Cayman Islands' Register of

Companies and the *Cayman Islands Gazette*; (ii) advertising the SPI petition and appointment of SPI Liquidators in Financial Times (Global edition); (iii) filing petitions with the Grand Court for their appointment as joint official liquidators and the court supervision of the winding up of the Funds; (iv) liaising and providing notices with stakeholders, banks, custodians, and other interested parties, including SPI's shareholders and directors; (v) collecting and reviewing the Funds' books and records and conducting investigations in relation to their assets and liabilities; (vi) receiving and reviewing the Funds' financial statements to determine their solvency, or lack thereof; (vii) holding meetings of creditors of the Funds; (viii) drafting reports to the creditors of the Funds and the Grand Court; (ix) corresponding with liquidators of third party funds in which the Funds had invested; (x) performing statutory obligations such as determining the currency of liquidation and attempting to obtain statements of affairs; and (xi) taking steps to establish and convene a liquidation committee and holding the first meeting of creditors. *See In re Mod. Land (China) Co., Ltd.*, 641 B.R. 768, 789 (Bankr. S.D.N.Y. 2022) ("Another factor supporting COMI being in the Cayman Islands is the ongoing restructuring proceeding itself.").

149.    Furthermore, the Foreign Representatives continue to investigate the Funds' rights in the form of potential claims, liabilities, and regulatory violations, which is and will continue to be controlled by the Foreign Representatives from the Cayman Islands. This investigation encompasses, *inter alia*, the recovery of the loans advanced to Sinai, the alleged falsification of SPI's financial statements and the inflation of its NAV..

150.    Third, the location of the Funds' presently realizable assets is, upon information and belief, in Florida.[11]

---

[11] The Funds' assets may include the proceeds disbursed pursuant to the loans among the Funds and Sinai.  At this time, the Foreign Representatives do not have sufficient information to determine the potential location of those funds, though it is possible they are located in New York and/or or Florida.

151.    Fourth, the location of the Funds' creditors is multiple jurisdictions, including the Cayman Islands. For example, SPI is a creditor of both ICA and IPA, and it is located in the Cayman Islands for the reasons stated herein. SPI's former administrator is also based in the Cayman Islands. The Foreign Representatives understand that the stated creditors at this juncture also include parties located outside of the Cayman Islands. Thus, this factor supports recognition or is neutral.

152.    Fifth, the jurisdiction that would apply to most disputes is either Florida (pursuant to the ICA-Sinai Loan and the IPA-Sinai Loan) or the Cayman Islands (pursuant to the SPI-ICA Loan and the SPI-IPA Loan). However, this factor tips in favor of the Foreign Representatives because the SPI PPM and all of the incorporation documents of the Funds are each governed by the laws of the Cayman Islands. *See, e.g., In re OAS S.A.*, 533 B.R. 83, 102 (Bankr. S.D.N.Y. 2015) (litany of references to Brazilian law and Brazilian companies in investment documents indicated that COMI was Brazil); *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 274 (Bankr. S.D.N.Y. 2019) ("Courts in the Second Circuit also look to the expectations of creditors with regard to the location of a debtor's COMI. For example, '[c]reditor expectations can be evaluated through examination of the public documents and information available to guide creditor understanding of the nature and risks of their investments.' In practice, the evaluation of creditor expectations has focused on reviewing disclosures in offering memoranda[.]") (citation omitted).

153.    Sixth, third parties would likely consider the Cayman Islands to be the COMI of the Funds, given the concerted efforts of the Foreign Representatives to wind down the Funds from their office in the Cayman Islands. *See supra* ¶ 148 (describing Foreign Representatives' activities to date); *see In re British Am. Isle of Venice (BVI) Ltd.*, 441 B.R. 713, 722-23 (Bankr. S.D. Fla. 2010) (third parties would view the BVI as a debtor's COMI given that the foreign representative

had, *inter alia*, become the "sole person responsible for the management of the debtor," had reviewed its books and records, communicated with the debtor's prior professionals, retained professionals as authorized by the BVI court, and investigated its subsidiaries).

154.    Finally, courts have repeatedly found activities such as those of the Foreign Representatives as sufficient to establish a debtor's COMI in the Cayman Islands.  *See, e.g., Ascot Fund*, 570 B.R. at 279-281 (the Cayman Islands is a debtor's COMI in part because the debtor's registered office was in the Cayman Islands at the time of appointment of the liquidators and at the time of the commencement of the Chapter 15 case, the articles of association stipulated that the debtor would be wound down pursuant to Cayman Islands law, and the liquidators "directed and conducted [the debtor's] liquidation from the Cayman Islands," hired United States and Cayman Islands counsel, notified the Cayman Islands Registrar of Companies, publicized their appointment in the Cayman Islands' Gazette and Financial Times (Global Edition), and supervised the updating of records and information); *Ocean Rig*, 570 B.R. at 704-705 (probative evidence that a debtor's COMI is the Cayman Islands is the hosting of meetings related to the restructuring in the Cayman Islands, and the provision of public notice of the restructuring); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 418 (Bankr. S.D.N.Y. 2014) (evidence supporting COMI presumption of the Cayman Islands includes the appointment order of the Cayman Islands court authorizing the filing of a Chapter 15 proceeding, and the liquidators taking "necessary steps to centralize the administration of the foreign proceeding" in the Cayman Islands, such as publishing notices to interested parties, conducting meetings, and changing the debtor's address).

155.    For these reasons, the Cayman Proceedings should each be recognized as a foreign main proceeding under 11 U.S.C. § 1517(b)(1).

**III.**     **Alternatively, the Cayman Proceedings are Each Foreign Nonmain Proceedings**

156.     For the reasons set forth above, the Foreign Representatives submit that each of the Cayman Proceedings constitutes a foreign main proceeding under 11 U.S.C. § 1517(b)(1).

157.     However, in the alternative, the Foreign Representatives seek recognition of the Cayman Proceedings as a foreign nonmain proceeding under 11 U.S.C. § 1517(b)(2).

158.     Courts will recognize a foreign proceeding as a "foreign nonmain proceeding" if "the debtor has an establishment within the meaning of section 1502 in the foreign county where the proceeding is pending."  11 U.S.C. § 1517(b)(2).

159.     "Establishment" is defined in Chapter 15 as "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. § 1502(5); *see Serviços de Petróleo*, 600 B.R. at 277 ("[T]he foreign debtor must establish a degree of stable connections with the jurisdiction to constitute a nontransitory 'establishment.'"); *British Am.*, 425 B.R. at 914-915 ("'Establishment' has been described as a 'local place of business.'").[12]

160.     Whether a debtor has an "establishment" must be determined at the time of the filing of the chapter 15 petition.  *See id.*

161.     Applying these factors, it is clear that the Funds maintain an establishment in the Cayman Islands that warrants recognition of the Cayman Proceedings each as a foreign nonmain proceeding.  Since their appointment, the Funds have undertaken myriad activities that impact the marketplace in the Cayman Islands, including by hiring local counsel and professionals and liaising with Cayman Islands-based service providers engaged prior to the Funds' insolvency. *See also British Am.*, 425 B.R. at 916 (recognizing Saint Vincent and Grenadine proceeding as foreign

---

[12] Unlike with a determination of COMI, chapter 15 provides no evidentiary presumption in connection with a determination of whether a debtor has an "establishment" in a certain jurisdiction.  The petitioner thus has the burden of proof on this issue.  *See id.*, 425 B.R. at 915.

nonmain proceeding in part because the debtor maintained accounts and was involved in financial transactions there).

162.    In sum, in the event the Court concludes that the Cayman Proceedings are not each a foreign main proceeding, the Cayman Proceedings should be recognized each as a foreign nonmain proceeding under 11 U.S.C. § 1517(b)(2) because the Funds maintain an "establishment" in the Cayman Islands, where the Cayman Proceedings are pending.

## IV.    Recognition of the Cayman Proceedings Would Not be Manifestly Contrary to the Public Policy of the United States

163.    The Cayman Proceedings should each be recognized as a foreign main proceeding, or in the alternative, as foreign nonmain proceedings, because doing so would not be "manifestly contrary to the public policy of the United States."  11 U.S.C. § 1506.

25.    "By requiring the proposed action to be 'manifestly' contrary to public policy, Congress makes clear this provision must be interpreted restrictively. Section 1506 should be invoked only under exceptional circumstances concerning matters of fundamental importance to the United States."  *See British Am.*, 441 B.R. at 717; *Fairfield Sentry*, 714 F.3d at 139 ("[T]he word 'manifestly' in international usage restricts the public policy exception to the *most fundamental policies of the United States*.") (emphasis in original).

164.    It is "well settled that the [public policy] exception is to be construed narrowly." *British Am.*, 441 B.R. at 717 (citing *In re Qimonda AG Bankr. Litig.*¸ 433 B.R. 547, 567-70 (E.D. Va. 2010) (collecting cases)).

165.    Two factors are relevant to a section 1506 analysis: "(1) whether the foreign proceeding was procedurally unfair; and (2) whether the application of foreign law or the recognition of a foreign main proceeding under Chapter 15 would 'severely impinge the value and import' of a U.S. statutory or constitutional right, such that granting comity would 'severely hinder

United States bankruptcy courts' abilities to carry out ... the most fundamental policies and purposes' of these rights." *Id.*

166.    The Cayman Proceedings are not "manifestly contrary to the public policy of the United States."   In fact, as in one of this court's decisions recognizing a BVI liquidation proceeding, there is "no reason to believe" that the Cayman Proceedings are "contrary to public policy." *See British Am.*, 425 B.R. at 901.

167.    First, the Cayman Proceedings are procedurally fair.  The Companies Act is a comprehensive statutory scheme that governs the liquidation of the Funds and that is consistent with approaches to liquidations in similarly situated countries. *British Am.*, 441 B.R. at 717 (a BVI proceeding governed by its liquidation statutes is evidence of procedural fairness).  Moreover, the Grand Court oversees all actions of the Foreign Representatives, including with respect to which of their powers can be exercised with or without sanction.   *See id.* Creditors, if any, can submit objections in the Cayman Proceedings.  These facts alone evidence the fundamental fairness of the Cayman Proceedings. *See id.* at 717-18 (BVI proceeding is procedurally fair based on even-handed application of BVI liquidation statutes, oversight of the court, and objection rights afforded to creditors); *Ocean Rig*, 570 B.R. at 707 (holding that "[g]ranting recognition of the Cayman Proceedings advances the public policy objectives" of chapter 15); *In re Millard*, 501 B.R. 644, 651–653 (Bankr. S.D.N.Y. 2013) (refusing to invoke the "public policy" exception to deny recognition of a Cayman Islands proceeding because the liquidators sought to "protect against asset grabbing … which is a traditional basis for the invocation of chapter 15 relief").

168.    Second, recognition of the Cayman Proceedings would not severely impinge the value and import of a United States statutory or constitutional right that would severely hinder this court's ability to effectuate such rights.  Rather, recognition of the Cayman Proceedings would

vindicate the rights of litigants to seek legitimate redress in an effort to facilitate an orderly, efficient, and productive insolvency proceeding in a foreign country. This is entirely compatible with the United States' interests in cooperation in cross-border insolvencies under Chapter 15.

## V.    Upon Recognition, the Court Should Grant Ancillary Relief to the Foreign Representatives

169.    As set forth herein and in the Proposed Order submitted herewith, the Foreign Representatives seek discovery from various individuals and entities based in Florida relevant to the investigations in the Cayman Proceedings. This includes Sinai and its officials (including Gitman and Kislyuk) who hold important information regarding the Sinai Loans and Klemming, who previously held an ownership interest in SPI and who helms Prudent Group, the holder of multiple investments of SPI AYF. Klemming and others may also possess information about the allegations of misreporting of SPI's NAV and its dispute with PwC over the 2020 audited financial statements.

### A.    Legal Standards

170.    Section 1521(a) of the Bankruptcy Code provides, in relevant part, that:

"[u]pon recognition of a foreign proceeding … where necessary to effectuate the purposes of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief including . . .

(4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities" … [and]

(7) granting any additional relief that may be available to a trustee.

11 U.S.C. §§ 1521(a)(4), (7); *see also British Am.*, 488 B.R. at 225 (summarizing discovery afforded under section 1521). [13]

---

[13] To grant discovery relief under section 1521(a)(4), the court need not conclude that the debtor has assets in the United States. *See id.* at 225.

171.     Section 1521(a)(4) of the Bankruptcy Code "confers exceedingly broad discretion

… that would further the purposes of chapter 15 and protect the debtor's assets and the interests

of creditors." *In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y.

2016); *see also In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346

(Bankr. S.D.N.Y. 2012) ("Section 1521(a)(4) provides specifically that the Court may enter an

order providing for 'the taking of evidence or the delivery of information concerning the debtor's

assets, affairs, rights, obligations or liabilities.' … By its terms, this provision enables a Foreign

Representative to take broad discovery concerning the property and affairs of a debtor.  This

discovery can include a "broad based inquiry into the debtor's assets and affairs" under Fed. R.

Bankr. P. 2004.  *British Am.*, 488 B.R. at 225 n. 16.[14]

172.     Further, courts have recognized that the scope of discovery sought via 11 U.S.C. §

1521(a)(4) is particularly broad when the foreign representative is "gathering information which

will enable them to comply with their duties."  *In re Platinum Partners Value Arbitrage Fund L.P.*,

583 B.R. 803, 821 (Bankr. S.D.N.Y. 2018).[15]

173.     The additional relief afforded under 11 U.S.C. § 1521(a)(7) encompasses the relief

provided by 11 U.S.C. § 542(e), which provides in pertinent part that:

> [s]ubject to any applicable privilege, after notice and a hearing, the court may order
> an attorney, accountant, or other person that holds recorded information, including
> books, documents, records, and papers, relating to the debtor's property or financial
> affairs, to turn over or disclose such recorded information to the trustee."

---

[14] *See In re Petroforte Brasileiro de Petróleo Ltda.*¸ 542 B.R. 899, 911 (Bankr. S.D. Fla. 2015) (holding that Rule 2004 applies in chapter 15 cases).

[15] Discovery sought via 11 U.S.C. § 1521(a)(4) is "not limited to documents in the United States.  Permissible discovery extends to documents in the possession, custody or control of a party, including documents held by a party's attorneys or agents" and the court "may order the production of documents from outside the United States."  *In re Markus*¸ 607 B.R. 379, 389–390 (Bankr. S.D.N.Y. 2019), *vacated sub nom. in part on other grounds*, *Markus v. Rozhkov*, 615 B.R. 679 (Bankr. S.D.N.Y. Apr. 3, 2020).  To that end, "[b]y its nature, chapter 15 involves parties located outside the United States.  Absent some express language in chapter 15 of any geographical limitation on the scope of discovery, there is no basis for [a bankruptcy court] … to impose such a limitation."  *Id.* at 390.

11 U.S.C. § 542(e); *see also Platinum Partners*, 583 B.R. at 810 ("Courts have held that a foreign representative may seek discovery pursuant to section 542(e).").[16]

174.    Section 1521(a)(7) "authorizes the court to grant to the foreign representative the sort of relief that might be available to a trustee appointed in a full bankruptcy case." *Inversora*, 560 B.R. at 655.[17]

175.    Relief under section 1521(a) is available only if "the interests of the creditors and the other interested entities, including the debtor, are sufficiently protected." *Petroforte Brasileiro¸* 542 B.R. at 909 (quoting 11 U.S.C. § 1522(a)).[18]

176.    The requirement to reasonably assure "just treatment of all holders of claims against or interests in the debtor's property" is satisfied where the applicable foreign insolvency law provides a comprehensive procedure for the orderly resolution of claims and the equitable distribution of assets among all the creditors in one proceeding. *See, e.g., In re Bd. of Dirs. of Telecom Arg., S.A.*, 528 F.3d 162, 170 (2d Cir. 2008).

177.    As such, courts have "great leeway" in determining whether the rights of all relevant parties are "sufficiently protected" and will generally consider a balancing of competing interests. *See In re Toft*, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should tailor relief balancing the interest of the foreign representative and those affected by the relief.").

---

[16] Section 1521(a)(7) exempts certain relief afforded elsewhere in the Bankruptcy Code, none of which apply here.

[17] Finally, pursuant to section 1507 of the Bankruptcy Code, the Court may also grant discretionary relief to provide additional assistance beyond that permitted under section 1521 to a foreign representative. *See* 11 U.S.C. § 1507(a).

[18] While the Bankruptcy Code does not provide a definition of "sufficient protection," the legislative history of section 1522 suggests that this requirement is meant to prevent the rights of United States creditors of the foreign debtor from being "seriously and unjustifiably injur[ed]." H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 116 (2005); *see also In re ENNIA Caribe Holding N.V.*, 596 B.R. 316, 322 (Bankr. S.D.N.Y. 2019) (explaining that "sufficient protection" embodies three basic principles: "the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law").

**B.     The Foreign Representatives' Requested Relief Will Promote the Purposes of Chapter 15 by Protecting the Assets of the Fund and the Interests of Any Creditors**

178.    The relief requested in this Petition is proper pursuant to sections 1507 and 1521(a)(4) and 1521(a)(7) of the Bankruptcy Code for the following reasons.

179.    As a general matter, discovery from third parties, including Sinai and its managers (*e.g.*, Gitman), Klemming, and Prudent (collectively, the "**Discovery Targets**") could be critical to the Foreign Representatives' administration of the Cayman Proceedings in an efficient and value-maximizing manner.

180.    In particular, their exercise of their fiduciary responsibilities to the Funds, as mandated by the Grand Court, necessitates such discovery, inasmuch as these third parties appear to have been privy to, or should have been aware of, many of the actions that precipitated the issuance of the Resolutions, the filing of the Supervision Petitions and the commencement of the Cayman Proceedings. *See Petroforte Brasileiro*, 542 B.R. at 913 (ordering section 1521 discovery against non-parties); *In re Comair Ltd.*, No. 21-10298 (JLG), 2021 WL 5312988, at *10 (Bankr. S.D.N.Y. Nov. 14, 2021) (concluding that the foreign representative's statutory duty under foreign law to "investigate the company's affairs, business, property, and financial situation" justified issuing discovery requests under 11 U.S.C. § 1521(a)(4) for non-party records).

181.    The Foreign Representatives seek documents, records, and other information from the Discovery Targets concerning, among other things:

(i)      The nature and distribution of the investments purportedly made pursuant to the ICA-Sinai Loan and the IPA-Sinai Loan;

(ii)     Sinai's involvement in the distribution of these loan proceeds;

(iii)    Klemming and/or Prudent's involvement in the allocation of these loan proceeds and their potential conflicts of interest;

41

(iv)    the September 2021 suspension SPI's redemptions and subscriptions;

(v)    the alleged inaccuracies associated with SPI's NAV, as previously explored by the FFP Directors; and

182.    By receiving this information, the Foreign Representatives will have a clearer picture as to potential claims that the Funds could raise in order to retrieve the funds loaned to Sinai, and to seek redress for potential mismanagement of the Funds.  *Comair*, 2021 WL 5312988, at \*10 ("Relief under section 1521(a)(4) is available to foreign representatives investigating potential causes of action irrespective of how any future litigation proceeds may be used.").

183.    In light of the aim of chapter 15 to "optimize disposition of international insolvencies" by providing foreign representatives appropriate access to the U.S. court system, *see B.C.I. Fins. Pty Ltd.*, 583 B.R. at 292, and the clear, ongoing risk of diminution in value and/or diversion of the Funds' assets in the United States, the Foreign Representatives respectfully submit that the requested discovery is appropriate and necessary "to effectuate the purposes of [chapter 15] and to protect the assets of the debtor."  11 U.S.C. § 1521(a)(4).

184.    The Foreign Representatives' requested relief provides sufficient protections to the Fund's creditors (if any) and other interested parties.

185.    First, the requested relief contributes to the just treatment of all holders of potential claims against the Funds.  Additional information as to the Funds' asset position (particularly with respect to the likelihood of repayment under the ICA-Sinai Loan and the IPA-Sinai Loan) can only benefit the Funds' potential creditors and other stakeholders.

*[remainder of page intentionally left blank]*

## <u>CONCLUSION</u>

For the reasons set forth in this Petition, the Foreign Representatives respectfully request that the Court enter an order, substantially in the form attached as **<u>Exhibit A</u>** to this Petition, recognizing the Cayman Proceedings as foreign main proceedings, appointing them as the foreign representatives of the Funds, granting the ancillary relief in aid of the Cayman Proceedings, and granting such other and further relief as this Court deems just and proper.

Dated: October 28, 2024
Miami, Florida

Respectfully submitted,

HOLLAND & KNIGHT LLP

/s/ *Joaquin J. Alemany*
Joaquin J. Alemany (FL Bar No. 662380)
Alex M. Englander (FL Bar No. 1035437)
701 Brickell Ave, Suite 3300
Miami, Florida 33131
Telephone: (305) 789-7763
Email: joaquin.alemany@hklaw.com
        alex.englander@hklaw.com

Warren E. Gluck
(*pro hac vice* admission forthcoming)
Elliot A. Magruder
(*pro hac vice* admission forthcoming)
787 Seventh Avenue, 31st Floor
New York, New York 10019
Telephone: (212) 513-3200
Email: warren.gluck@hklaw.com
        elliot.magruder@hklaw.com

*Counsel for the Foreign Representatives*

43

## <u>VERIFICATION</u>

I, David Griffin, as one of the duly appointed joint official liquidators of SPI Investment Fund SPC (in Official Liquidation), International Portfolio Allocation Ltd. (in Official Liquidation) and International Capital Allocation Ltd. (in Official Liquidation), declare that I have full authority to verify the foregoing *Verified Petition for Recognition of Foreign Insolvency Proceedings and Application for Additional Relief, Pursuant to Sections 542, 1502, 1504, 1507, 1515, 1517, 1520 and 1521 of the Bankruptcy Code and Incorporated Memorandum of Law* (the "**Petition**").  I have read the Petition and believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the lass of the United States of America that the foregoing is true and correct.

Executed this 28th day of October, 2024, in Grand Cayman, Cayman Islands.

_____
David Griffin