# EXHIBIT 10

# MASTER LOAN AGREEMENT

## MLA - ICA - USD

### *PREAMBLE*

**THE MASTER LOAN AGREEMENT** with the following number and identification code MLA – ICA - USD between INTERNATIONAL CAPITAL ALLOCATION LTD. and SINAI HOLDINGS, LLC regulates the terms and conditions outlined below by and between:

(A)    On one hand: INTERNATIONAL CAPITAL ALLOCATION LTD., with registered office at 3rd Floor One Capital Place, Shedden Road, PO Box 10190, George Town, Grand Cayman KY1-1002, Cayman Islands hereafter referred to as the "LENDER",

(B)    On the other hand: SINAI HOLDINGS, LLC, headquartered at 1111 Kane Concourse, 518 Bay Harbor Island, 33154 Florida, USA, hereafter referred to as "BORROWER".

**WHEREAS** the Lender and the Borrower have agreed that the Lender will finance the transactions in loan receivables or other financing instruments or any profit participation arrangement directly or indirectly executed by the Borrower in the aggregate amount specified in Section 2 pursuant to the terms and conditions of this Agreement. The Lender has the right to send any partial amount at any time convenient for the Lender to the account of the Borrower;

**WHEREAS** in consideration for this Loan, the Borrower will ensure the delivery to the Lender of unencumbered, fully perfected, third party security interests in accordance with the provisions of Section 9 of this Agreement;

The Lender and the Borrower are hereinafter referred to together as the "Parties" and each individually as a "Party".

**46**

**NOW THEREFORE,** the parties hereto agree as follows:

## Section 1 – Definitions:

Wherever used in this Agreement, the terms below shall have the following meanings;

a) **"Confidential Information"** means any information that the Borrower has furnished or will furnish to the Lender according to this Agreement, but does not include any such information that is or becomes generally available to the public (other than as a result of a breach by the Lender of its obligation hereunder) or that is or becomes available to the Lender from a source other than the Borrower;

b) **"Effective Date"** is date on which funds are transmitted by Lender to Borrower;

c) **"USD"** shall mean the lawful currency of the United States of America;

d) **"Loan"** shall have the meaning ascribed to it in Section 2 hereof;

e) **"Master Loan Agreement" or "Agreement"** shall mean this document and the provisions governing it;

f) **"Payment Date"** means any day and date between date of signing this document until the loan is fully repaid after the Effective Date on which any repayment, in whole or in part, inclusive of accrued interest then due and owing under the Loan shall be by the Borrower;

g) **"Interest Payment Date"** shall mean the date on which the Borrower shall pay to Lender the Interest owed to Lender as of the date on which a specific request for the same is made by the Lender.

h) **"Principal Payment Date"** shall mean the date on which the Borrower shall pay to Lender the Principal owed to Lender as of the date on which a specific request for the same is made by Lender.

i) **"Term"** means the duration from the day this Agreement is executed to the maturity date of June 30, 2025.

j) **"Maturity Date"** shall mean June 30, 2025.

Words importing the singular include the plural and vice versa and the neutral gender shall include the feminine and masculine genders.

## Section 2 - Agreement for the Loan:

Subject to the terms and conditions of this Agreement, the Lender agrees to provide financing to the Borrower, and the Borrower agrees to borrow from the Lender, for an aggregate amount of up to USD one hundred million dollars (USD 100,000,000.00). This amount can be made available by the Lender to the Borrower in one or multiple transfers and advances of funds by Lender to either of the accounts indicated in this Master Loan Agreement, **at the mutual agreement of the Lender and Borrower.** Any monies advanced and funded to Borrower by Lender shall hereafter be referred to as a "Loan" or "Loans".

**47**

## Section 3 - Interest Rate and Threshold Fee:

a) Any Loan made hereunder shall bear interest at an annual interest rate of sixteen percent per annum (16.0%) until the Loan matures or is repaid in full. For the sake of clarity, this Interest Rate shall be calculated as a simple annual interest rate calculated over a 360-day annual year basis.

## Section 4 - Disbursement of the Loan and Banking Details:

a)  **General Overview**:

To effectuate the disbursement of any Loan, a request for funding under the terms of this Agreement must be completed by the Borrower through the submission of a Notice of Drawdown, as included hereto in Exhibit A, to Lender. Provided that Borrower has submitted a Notice of Drawdown and complied with all conditions precedent to the advance of a Loan hereunder and is not otherwise in default under the terms of this Agreement or any other related loan document, Lender shall fund the Loan within 10 days of its receipt of a Notice of Drawdown. If Borrower is not in compliance with the conditions for the advancement of a Loan or is in default under this Agreement or any other loan document, Lender shall be under no obligation to disburse funds to Borrower after submission to Lender of a Notice of Drawdown.

### Lender

*Any transfers of funds from the Borrower to the Lender shallbe paid to the following account:*

**Bank Name:** ███████████████████
**SWIFT:** ██████████
**ABA:** ██
**Favor of ("F/O"):** ████████████████
**Account ("A/C"):** ███████████
**FFC: Account # –** ███████ **-** (International Capital Allocation Ltd)

This bank account is hereinafter referred to as the "Lender's Bank Account".

### Borrower
*Any transfers of funds from the Lender to the Borrower shall be paid to the following account:*

**Beneficiary Bank Name:** ███████████
**SWIFT:** ████████
**ABA:** █████████████
**Favor of ("F/O"):** ████████████
**Account ("A/C"):** █████████

These bank accounts are hereinafter referred to as the "Borrower's Bank Account".

Lender may change Lender's Bank Account and Borrower may change Borrower's Bank Account upon the provision of written notice of such change to the other Party; provided, that the change of such bank account shall not be effective until a date which is five (5) business days after the date on which notice of change has been received.

**48**

b) **Additional Considerations**:

The Parties hereto acknowledge and agree that any Loan made under this Agreement will be funded into the Borrower's Bank Account, or a 'lock box' account controlled by the Lender, per Section 4(a)hereto. Thereafter, the funds will be forwarded from the Borrower's Bank Account to another, to be determined, bank account provided by the Borrower (the "Operational Account").

It is duly confirmed and accepted by the Parties that the Lender shall have access to, view, review and control operational and cash disbursement control of the Borrower's Bank Account and the Operational Accounts which Loan proceeds are released to.

If the Lender reasonably deems that there is any breach of the provisions provided herein, it is agreed that the Lender will notify the Borrower, and the Borrower will have one (1) business day to either (i) explain the circumstances and provide evidence supporting such claims or (ii) cure the breach to the satisfaction of the Lender. If the Borrower does not comply with this provision, the Lender has the right to find the Borrower in default and call the Loan or Loans and, Borrower acknowledges, agrees and consents that Lender shall have the power and authority to withdraw the funds in Borrower's Bank Account and/or the Operational Account and cause the same to be transferred to the Lender's account, at which time the same shall be applied toward repayment of the indebtedness hereunder

The Borrower will irrevocably assign and pledge to the Lender the receivables referenced in the Pledge Addendum included herein, as provided for in the Pledge Addendum and Appendix I thereto governing the Borrower's irrevocable pledge of the subject collateral for a given Loan.

## Section 5 - Payment of the Loan:

a) **Interest Payment**: The payment of interest shall occur on a "Interest Payment Date" The Lender may request a partial or full payment of Interest owed up to such Interest Payment Date as determined by the Lender per the terms of this Loan Agreement, payable by the Borrower in either one or a combination of the following ways:

   i. Upon Receipt of a Call Notice: The Borrower shall ensure each payment will take place within thirty (30) days after receiving a payment demand for the Interest amount due from the Lender. Such payments shall be made to Lender's Bank Account or such other account as directed by the Lender, or

   ii. Lender's Remittance from Borrower's Bank Account: Borrower acknowledges and agrees that the Lender may, from time to time, with or without notice and in Lender's sole discretion, cause a payment to be released and transferred from Borrower's Bank Account to Lender's Bank Account or such other account determined by Lender in Lender's sole discretion in an amount not to exceed the amount of the interest due to Lender as of the date of such transfer.

b) **Principal Payment**: The payment of Principal shall occur on a "Principal Payment Date". The Borrower may prepay at any time that the Borrower may elect, without penalty, provided that Borrower furnishes Lender with ten (10) day written advance notice of the intent to make such a prepayment. The Lender may request a partial or full repayment of the Loan in accordance with this Agreement, at such time as the Lender may elect, in Lender's sole discretion. On the Maturity Date, the entire outstanding principal balance of the Loan, together with all accrued and unpaid interest thereon, and all other amounts due and payable hereunder shall be due and payable. Notwithstanding the foregoing, the Loan may, in Lender's sole discretion, be renewed for a period to be agreed upon in writing, with the same terms and conditions as in this Agreement; provided that Borrower is not then in default of this Agreement or any other loan document and satisfies such

terms and conditions as Lender may, in its sole and absolute discretion, impose on such a renewal. In order to seek a renewal of this Agreement, Borrower shall deliver a renewal request to Lender in writing not less than ten (10) days before the Maturity Date.

Any Principal advanced hereunder shall be paid by the Borrower to the Lender by either or both of the following:

i.   Upon Receipt of a Call Notice: Within thirty (30) days of Lender's delivery to Borrower of written notice of a demand for payment, Borrower shall transfer the demanded payment amount, with such payment to be made or transferred to Lender's Bank Account or such other account as may be designated by Lender to Borrower in writing; and/or

ii.  Lender's Remittance from Borrower's Bank Account: The Lender may, from time to time, in Lender's sole discretion and with or without notice, cause to be released and transferred from Borrower's Bank Account to Lender's Bank Account or such other account determined by Lender in Lender's sole discretion a payment in an amount not to exceed the amount of the of Principal and Interest due to Lender by Borrower as of the date of such transfer, to which right to initiate such a transfer Borrower consents, acknowledges and agrees..

c)   **Priority of Payments**: All monies repaid to the Lender by the Borrower shall be applied first to any accrued and outstanding interest, and the remainder, if any, toward the reduction of Principal, and the remainder, if any, to late fees and costs and any other amounts due by Borrower to Lender under this Agreement or any other loan document. Notwithstanding the previous sentence, Lender shall have the right, at its sole option, to apply any payment received under this Agreement first to any late fees, collection or other expenses to which Lender may be entitled under this Agreement or any other loan document.  The making of any partial prepayment shall not change the due dates or amounts of monthly installment payments, if any, next becoming due, but shall only change the allocations of future payments of interest and principal based on such prepayment and produce possibly an earlier payoff date on the sums due under this Agreement. Borrower shall be solely responsible for the satisfaction of any taxes or tax liability arising out of or in connection with any payment made hereunder. All sums payable by the Borrower under this Agreement shall be paid free and clear of taxes (except to the extent required by the law) without any deduction or withholding for or on account of any present or future tax duties, fees, or charges of any nature now or hereafter imposed by the United States or any other country, any political subdivision or taxing authority thereof or any federation or organization.

d)   In order to effectuate a request for repayment of any outstanding amounts under this Agreement, the Lender will cause to be delivered a Call Notice Request, a copy of which is  attached hereto in Exhibit B, to the Borrower. The repayment of any amounts set forth in any Call Notice Request are and shall be subject to the provisions of this Section 5.

**Section 6 – Term:**

Any Loan evidenced by this Agreement shall mature on June 30, 2025. At that time, all unpaid principal and accrued interest, together with all unpaid fees, expenses and other sums, if any, due hereunder and under the Loan Documents (as hereafter defined) shall be due and payable.

**Section 7 – Representations and Warranties:**

a)  Both of the Parties hereto represent and warrant to the other party as follows:

    (i)  Both parties have the full power and authority and have taken all action necessary to execute and deliver this Agreement and to fulfil their obligations hereunder, and to consummate the transactions contemplated by this Agreement;

    (ii)  The making and performance of this Agreement and all documents executed and delivered and required to be executed and delivered hereunder do not and will not violate any law or regulation of the jurisdiction of its incorporation or any other law or regulation applicable to either of them;

    (iii)  This Agreement has been duly executed and delivered by either party and constitutes their legal, valid and binding obligation, enforceable in accordance with its terms, and all corporate action necessary by either party to effectuate this transaction has occurred and either party may request delivery of evidence of such corporate action at any time;

    (iv)  All consents, licenses, approvals, authorizations, registrations (including filling this agreement with any required governmental agencies), filings, opinions and declarations from or with any agency, department, administrative authority, statutory corporation, or judicial entity necessary for the validity or enforceability of their respective obligations under this Agreement have been obtained and no governmental authorizations otherthan any already obtained are required in connection with the execution, delivery, and performance of this Agreement.

    (v)  Each party hereto has full power and authority to own its property and carry on its business as it is now being conducted and as contemplated in connection with this Agreement and the Loan, and to enter into the transactions contemplated hereby and by the Loan, to execute and deliver this Agreement and to execute and deliver the other documents, instruments and certificates executed or delivered this date in connection with the Loan (collectively, the "Loan Documents") and to perform its obligations thereunder.

    (vi)  No actions, suit, investigation, or proceeding is pending, or to the knowledge of any of the undersigned, threatened, against Borrower before any court, arbitrator, or administrative or governmental body which might result in any material adverse change in the business, conditions or operation or net worth of Borrower, or the value of the Collateral, and no action or proceeding has been instituted or, to the best of our knowledge threatened by any person or entity before any court or governmental authority or agency, nor has any order, judgment or decree been issued or proposed to be issued by any court or governmental authority or agency to set aside, restrain, enjoin or prevent the entering into and carrying out of the transactions contemplated by this Agreement or any of the Loan Documents.

    (vii)  Borrower is not a party to any contract or agreement, or subject to any restriction, which does or will materially and adversely affect this Agreement or the Collateral. The execution and delivery of this Agreement, any of the Loan Documents or any other agreement contemplated hereby, and the fulfillment of, and compliance with, the respective terms and provisions of each thereof, to the extent they have occurred on or prior to the date hereof do not, and to the extent they occur hereafter will not, conflict with or result in a breach of the term, conditions or provisions of, or constitute a default under or result in any violation of, this Agreement or any of the Loan Documents, or any other contract, agreement or understanding to which Borrower is a party, or result in the creation of any lien,

**51**

encumbrance (other than intended hereby or by the Loan Documents), or charge upon any of the property or assets of Borrower including, without limitation, the Collateral, or conflict with or result in any violation of any operating agreement or by-laws of the Borrower, any applicable law (including any securities law, Blue Sky law, usury law or any law limiting or restricting the rate or amount of interest that may be charged), statute, rule or regulation, or any instrument, order, award of any arbitrator, judgment or decree to which Borrower, or the Collateral is subject.

(viii)    Neither this Agreement nor any of the Loan Documents to which Borrower is or will be a party, nor any other instrument, document, certificate or statement furnished to Lender by or on behalf of Borrower in connection with the transactions contemplated by this Agreement and the Loan Documents contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein not misleading. There is no fact which has not been disclosed by Borrower to Lender in this Agreement or any of the Loan Documents, or in any other instrument, document, certificate or written statement furnished to Lender by or on behalf of Borrower, which materially and adversely affects (i) the Collateral, business, financial conditions, operations or net worth of Borrower, (ii) the ownership of Borrower or its business or (iii) the ability of Borrower to perform its obligations under this Agreement or any of the Loan Documents.

(ix)    Borrower is solvent.  Borrower's fulfillment of and compliance with the provisions of this Agreement and the Loan Documents, and Borrower's use of the disbursement(s) hereunder do not and will not cause Borrower to be insolvent, to be unable to pay its debts as they become due, or to retain insufficient capacity to conduct its business.

b)    The Borrower further represents and warrants to the Lender that on and as of the Effective Date the Borrower is not aware of any defense to payment arising out of any act or omission of the Borrower, or any right of offset or counterclaim against the Lender.

**Section 8 - Events of Default:**

8.1

a) <u>In the event:</u>

(i)    The Borrower fails to pay any sum due from it hereunder at the time, in the currency and in the manner specified herein; or

(ii)    Any representation or statement made by the Borrower in this Agreement or any notice or other document, certificate, or statement delivered by it pursuant hereto or in connection herewith is or proves to have been incorrect or misleading when made; or

(iii)    The Borrower fails duly to perform or comply with any of the obligations expressed to be assumed by it in this Agreement; or

(iv)    The Borrower fails duly to perform or comply with any other obligation expressed to be assumed by them in this Agreement and such failure is not remedied within seven (7) business days after the Lender has given notice thereof to the Borrower; or

(v)    Any indebtedness of the Borrower, whether due and owing to the Lender or any other party, is not paid when due, or any indebtedness is declared to be or otherwise becomes due and payable prior to its specified maturity or any creditor of the Borrower becomes entitled to

declare any indebtedness due and payable to its specified maturity; or

(vi)   The Borrower is unable to pay its debts as they fall due, commences negotiations with any one or more creditors with a view to the general readjustment or a rescheduling of its indebtedness, or makes a general assignment for the benefit of or a composition or arrangement with its creditors; or

(vii)  The Borrower is declared bankrupt; or

(viii) The Borrower repudiates this Agreement or does or causes to be done any act or thing evidencing an intention to repudiate this Agreement.

**b) Then, the Lender may, at its sole option:**

(i)    Declare the Loan to be immediately due and payable (where upon the same shall become so payable together with interest accrued thereon),

(ii)   Declare that the Loan shall be cancelled, whereupon the same shall be cancelled, without waiving or forgiving repayment of any amounts then due and owing to Lender.

(iii)  Seek remedies as granted by applicable laws and further outlined in the Pledge Addendum.

8.2      Notwithstanding the foregoing, upon the occurrence of an Event of Default, all sums outstanding under this Agreement may, at Lender's sole option, become, or may be declared to be, immediately due and payable in full, and the Lender may exercise any of its other rights and remedies as set forth in this Agreement and/or all other Loan Documents, including, without limitation, the right to increase the interest rate on such sums to the Default Interest Rate. The Default Interest Rate shall be the greater of the Interest Rate set forth in this Agreement or the maximum interest rate provided by applicable state law. Lender's delay or failure to accelerate this Agreement or to exercise any other available right or remedy shall not impair any such right or remedy, nor shall it be construed to be a forbearance or waiver. The remedies of Lender as provided herein shall be cumulative and concurrent, and may be pursued singly, successively or together, at the sole discretion of Lender and may be exercised as often as occasion therefor shall arise. No act of omission or commission of Lender, including specifically any failure to exercise any right, remedy or recourse, shall be effective, unless set forth in a written document executed by Lender, and then only to the extent specifically recited therein. A waiver or release with reference to one event shall not be construed as continuing, as a bar to, or as a waiver or release of any subsequent right, remedy or recourse as to any subsequent event.

**The Lender has priority over equity investors, any other creditors, or any other member of the capital structure, in any future bankruptcy process in regards to any collateral specifically pledged to the Lender in accordance to the terms of this Agreement.**

**Section 9 – Pledge of Assets:**

a) To secure this Agreement and Loan made hereunder, the Borrower shall provide a first priority security interest in a pool of receivables (the "Collateral Pool") which shall be pledged, free and clear of any incumbrances, to the benefit of Lender, and which shall be acceptable to Lender in Lender's sole and absolute discretion. If any advance rate concepts are decided to be employed hereunder, such advance rates shall be calculated as a percentage (%) of the face-value of the Collateral Pool and may be determined at the sole discretion and absolute discretion of the Lender; provided, however, that foregoing shall be communicated to, and agreed by, the Borrower, in writing, prior to the release of any

**53**

monies and, in any event, within five (5) days of Lender's notice of the foregoing. In the event that Borrower fails or refuses to agree in writing to the same, Lender may (a) withhold any funding to Borrower and/or (b) unilaterally terminate this Agreement, at which time all sums due hereunder to Lender by Borrower shall be due and payable to Lender without notice or demand for the same.

b) The Borrower shall, upon the written request of Lender, execute such additional documents as Lender may request, in Lender's sole discretion, for the making and filing of necessary registrations and actions within United States, including but not limited to the filing of UCC statements, and any other filing or documents needed to make any and all such pledges fully valid and enforceable against the Borrower, and to do so by the dates or within the time periods set forth in any written request made by the Lender for the same.

## Section 10 – Assignment:

This Agreement shall bind and inure to the benefit of the respective successors of the Parties hereto, except that the Borrower may not assign or otherwise transfer all or any parts of its rights or obligations under this Agreement without the prior written consent of the Lender, which may be granted or withheld in Lender's sole and absolute discretion.

## Section 11 –Waivers and Consents, Partial Invalidity:

Except as otherwise set forth in this Agreement, Borrower, for itself, and its respective heirs, legal representatives, successors, and assigns, respectively, hereby expressly (a) waives demand, notice of demand, presentment for payment, notice of nonpayment or dishonor, protest, notice of protest and all other notice, filing of suit and diligence in collecting the amounts due under this Agreement or under the other Loan Documents, or in Lender's enforcing any of its rights under this Agreement or other Loan Documents securing the repayment hereof; (b) agrees to any substitution, addition or release of any collateral or any party or person primarily or secondarily liable hereon; (c) agrees that Lender shall not be required first to institute any suit, or to exhaust its remedies against Borrower or any other person or party to become liable hereunder, or against any collateral in order to enforce payment of this Agreement; and (d) consents to any extension, rearrangement, renewal or postponement of time or payment of this Agreement and to any other indulgence with respect hereto without notice, consent or consideration to any of them. No failure to exercise, nor any delay in exercising, any right or remedy under this agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy prevent any further or other exercise thereof or the exercise of any other right or remedy. The rights and remedies provided herein are cumulative and not exclusive of any rights or remedies provided by law.

If, at any time, any provision of this Agreement is or becomes illegal, invalid, or unenforceable in any respect under the law of any jurisdiction or by any court of competent jurisdiction, neither the legality, validity, or enforceability of the remaining provisions thereof, nor the legality, validity, or enforceability of such provision under the law of any other jurisdiction, shall in any way be affected or impaired thereby, and shall remain in full force and effect.

## Section 12 – Counterparts:

This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same agreement.

**54**

**Section 13 - Applicable Law:**

This Agreement shall be governed by, and construed in accordance with, the laws of the State of Florida. Borrower hereby consents to personal jurisdiction in the State of Florida with respect to any and all matters arising under or relating to this Agreement.

The Borrower and any endorsers, sureties, guarantors, and all others who are, or who may become liable for the payment hereof, severally expressly grant to the Lender a continuing first position lien security interest in and authorize and empower the Lender, at its sole discretion, at any time after the occurrence of an Event of Default hereunder and provided all applicable notice, grace and/or cure periods shall have expired, to appropriate and in such order as Lender may elect, apply to the payment hereof any and all money, general or specific deposits, or collateral of any such parties now or hereafter in the possession of the Lender.

Borrower, and any endorsers, sureties, guarantors and all others who are, or who may become liable for the payment hereof, severally, irrevocably, and unconditionally (a) agree that any suit, action, or other legal proceeding arising out of or relating to this Agreement shall be brought, in a court of record of the State of Florida in Dade County, in the United States District Court servicing Dade County, Florida; (b) consent to the jurisdiction of each such court in any such suit, action or proceeding; and (c) waive any objection which it or they may have to the laying of venue of any such suit, action, or proceeding in any such courts.

**Section 14 – Notice:**

All notices, advice, statements, requests, demands, and other communications (**"Notices"**) under this Agreement shall be made in the English language and shall be given or made to the other Party in writing or, except for routine notices, to be confirmed in writing and shall be addressed to each Party at the addresses included in the Preamble. All notices, demands, requests, consents and other communications shall be in writing and served by hand delivery, by certified mail, return receipt requested, or by a recognized overnight delivery service, to the addresses set forth in the caption of this Mortgage, unless proper written notice has been given to all other parties of any change in address. Notices and other written communication shall be deemed to have been properly served upon delivery to the designated address provided, however, that any notice or other communication sent by certified mail, return receipt requested, shall be deemed to have been properly served on the third business day after mailing, regardless of when it is actually received.

**Section 15 - Financial Reporting:**

Borrower will deliver (or cause to be delivered) to the Lender the following:

(a)    annual financial statements of the Borrower, on forms satisfactory to the Lender, together with signed copies of the federal income tax returns of Borrower, including all schedules, within one hundred twenty (120) days following the filing date or after the end of each fiscal year, as applicable;

(b)    such other commercially reasonable information about Borrower, as Lender reasonably requests within ten (10) days of the Lender's written request.

The Lender may without further consent share data, inclusive of financial data, tax returns as well as other private information with professionals and other third parties, as long as said parties agree to keep said data confidential and use the data provided for the purpose of underwriting, evaluation, servicing and assigning the Loan.

**55**

**Section 16 – Change**:

None of the terms or provisions of this Agreement may be waived, altered modified or amended except by a written document executed by Lender and Borrower, and then only to the extent specifically recited therein.

**Section 17 - Payments of Costs:**

Borrower covenants and agrees to pay all and singular reasonable costs, taxes, fees, and expenses of every kind and nature, including Lender's reasonable attorneys' fees (including on appeal and in bankruptcy), documentary stamp taxes, intangible taxes and other excise taxes, and the cost of title evidence, incurred or expended at any time by Lender in the collection of the loan evidenced hereby or any other applicable Loan Documents or otherwise incurred in protecting and preserving the lien of its interest in and to the Collateral or in enforcing Lender's rights under this Agreement or any other Loan Documents, or in enforcing, sustaining, protecting, or defending the lien or priority of the UCC-1 or any security interest or any other applicable Loan Documents against any and all persons, including, but not limited to, lien claimants or the exercise of the power of eminent domain or other governmental power of any kind. Every such payment made by or on behalf of Lender shall be immediately due and payable by Borrower to Lender and shall bear interest from the date of disbursement by Lender at the rate per annum then applicable under this Agreement to sums of principal then outstanding and the same, together with such interest, and shall be secured by the lien of Lender on the Collateral. Nothing contained in this Section shall be construed as requiring Lender to advance or spend money for any of the purposes mentioned in this Section.

**Section 18 - Interest Limits; Usury**:

If the calculation of interest or the imposition of a change in the rate of interest after acceleration upon default or the payment of any fees or other charges which are construed to be interest under applicable law, rule, or regulation in effect from time to time, result in an effective rate of interest higher than that permitte d to be paid under applicable law, rule, or regulation in effect from time to time, then such charges shall be reduced by a sum sufficient to result in an effective rate of interest no greater than the maximum effective rate of interest permitted to be paid under applicable law, rule or regulation in effect from time to time. The Lender may, in determining the maximum rate permitted under applicable law, rule or regulation in effect from time to time, take advantage of: (i) the rate of interest permitted by Florida Statutes Chapter 665 (Florida Savings Association Act), by reason of both Section 687.12 Florida Statutes ("interest rates: parity among licensed lenders or creditors") and 12 United States Code, Sections 85 and 86, and (ii) any other law, rule or regulation in effect from time to time, available to Lender which exempts Lender from any limit upon the rate of interest it may charge or grants to Lender the right to charge a higher rate of interest than that permitted by Florida Statutes, Chapter 687. Upon maturity of this Agreement, whether by acceleration or in due course, interest shall be recalculated over the actual life of the loan based upon the amounts outstanding, and if the total amount of interest theretofore paid exceeds the amount permitted to be paid under applicable law, rule, or regulation in effect from time to time, the excess shall be credited to principal, or if such excess exceeds the principal amount due hereunder, refunded to the Borrower.

**Section 19 - WAIVER OF JURY TRIAL:**

WAIVER OF JURY TRIAL AND CONSEQUENTIAL AND PUNITIVE DAMAGES. EXCEPT AS PROHIBITED BY LAW, BORROWER AND LENDER (BY ACCEPTANCE HEREOF) EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO CLAIM OR RECEIVE CONSEQUENTIAL OR PUNITIVE DAMAGES IN RESPECT OF ANY LITIGATION (INCLUDING, BUT NOT LIMITED TO, ANY CLAIMS, CROSS-CLAIMS AND THIRD PARTY CLAIMS) BASED ON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS INSTRUMENT OR ANY OF THE OTHER THE LOAN DOCUMENTS AND THE TRANSACTIONS CONTEMPLATED THEREIN, OR ANY COURSE OF CONDUCT,

COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF BORROWER AND LENDER.  IF THE SUBJECT MATTER OF ANY LITIGATION IS ONE IN WHICH THE WAIVER OF JURY TRIAL IS PROHIBITED, NEITHER BORROWER NOR LENDER SHALL PRESENT AS A NON-COMPULSORY COUNTERCLAIM IN SUCH LITIGATION ANY CLAIM ARISING OUT OF THIS INSTRUMENT. FURTHERMORE, NEITHER BORROWER NOR LENDER SHALL SEEK TO CONSOLIDATE ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY LITIGATION IN WHICH A JURY TRIAL CANNOT BE WAIVED. BORROWER HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. BORROWER ACKNOWLEDGES THAT THE PROVISIONS OF THIS PARAGRAPH ARE A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO THIS AGREEMENT AND MAKE THE LOAN.

**IN WITNESS WHEREOF** the Parties to this Agreement have caused this Agreement to be duly executed and signed, in as many original copies as there are Parties to this Agreement, each Party declaring having received one original copy.

**The Lender**

**Name**: Dennis Klemming          **By**:

**Capacity**: Director               **Date**:

**Name**: Niklas Klemming          **By**:

**Capacity**: Manager               **Date**:

**The Borrower**

**Name**: Jacob Gitman            **By**:

**Capacity**: President             **Date**:

**Name**: Yulia Kislyuk           **By**:

**Capacity**: Manager             **Date**:

58

**Exhibit A**

## NOTICE OF DRAWDOWN

**International Capital Allocation Ltd.**

Attn.: Mr. Klemming

Ref: Notice of Drawdown under the Master Loan Agreement

Dear Sir,

1.  We refer to Section 4 of the Master Loan Agreement (the "Agreement"), executed by and between the Borrower and Lender on 08/12/2020. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2. This is to formally request a Loan to be affected under the terms of the Agreement, as follows:

| Beneficiary Bank: | | | Amount: | |
|---|---|---|---|---|
| ABA | | | Currency: | |
| Beneficiary Bank Swift: | | | Date of Drawdown: | |
| Beneficiary Name: | Sinai Holdings LLC | | MLA Maturity Date: | |
| Beneficiary Account Number: | | | Interest: | 16.00% p.a. |

3. This Loan shall be repaid in accordance with the terms of this Notice of Drawdown and the Agreement, and we hereby irrevocably confirm our interest in receiving such funds at your earliest convenience.

**The Lender**

**Name**: Dennis Klemming

**Capacity**: Director

**By**:

**Date**:

**Name**: Niklas Klemming

**Capacity**: Manager

**By**:

**Date**:

59

**The Borrower**

**Name**: Jacob Gitman                                    **By**:

**Capacity**: President                                   **Date**:


**Name**: Yulia Kislyuk                                   **By**:

**Capacity**: Manager                                     **Date**:

**Exhibit B**

## CALL NOTICE REQUEST FORM

**SINAI HOLDINGS LLC**
1111 Kane Concourse, Bay Harbor Island, 33154
Florida, USA

Attn.:  Mr. Jacob Gitman / Leonid Slobodskoy

Ref: Notice of Repayment under the Master Loan Agreement:

Dear Sirs,

1. We refer to Section 5 of the Agreement, executed by and between the Borrower and Lender on 07/01/2019. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2. This is to formally request a REPAYMENT to be affected under the terms of the Agreement, as follows:

| | | | | |
|---|---|---|---|---|
| **Beneficiary Bank:** | | | **Amount:** | |
| **Beneficiary Bank Swift:** | | | **Currency:** | |
| **Beneficiary Name:** | | | **Date of Call Request:** | |
| **Beneficiary Account Number:** | | | | |

3. The repayment outlined herein shall be repaid in accordance with the terms of this Call Notice Request Form and the Agreement, and by singing hereunder, the Lender irrevocably confirms its interest in receiving such funds per the allotted time in this Agreement.

**The Lender**

**Name**: Dennis Klemming          **By**: _Dennis Klemming_

**Capacity**: Director              **Date**:


**Name**: Niklas Klemming          **By**:

**Capacity**: Manager              **Date**:

**61**

## Exhibit C

## Pledge and Cash Controls Addendum for MLA – ICA - USD

*by and between*

### Sinai Medical Holdings, LLC
*and*
### INTERNATIONAL CAPITAL ALLOCATION LTD.
*and*
### Collection Consolidation LLC

As security for the obligations created under this Master Loan Agreement, Sinai Medical Holdings, LLC (the "**Assignor**") hereby assigns and pledges to INTERNATIONAL CAPITAL ALLOCATION LTD. (the "**Assignee**") all of the Assignor's rights, title and interest in the receivables outlined herein and all other proceeds remitted to the beneficiary account of such pledged receivables (jointly defined as "**Assigned Deposits**"), and grants to the Assignee, a security interest therein, and agrees that until satisfaction in full of all obligations, the Assignee shall have and possess the entire right, title and interest in and to the Assigned Deposits. Moreover, in the event the Assignee is not the beneficiary of certain receivables, Assignor gives authority to Assignee to have access to view, review and control operational and cash disbursement control of the Assignor's Assigned Deposits.

The Assignor agrees that the Assignee is hereby authorized to deduct directly from the Assigned Deposits all amounts due to the Assignee under the Agreement and Pledge Addendum without any prior notice or any authorization from the Assignor.

**The parties agree that the Assignee shall at all times be deemed the first priority security interest holder of the correlative specific receivables as outlined in the Appendix included herein.**

The Assignor surrenders all authority to withdraw, disburse or receive the benefits of the Assigned Deposits, unless otherwise stated in writing by the Assignee. This Pledge Addendum is irrevocable so long as any Obligations are outstanding and shall terminate only upon the Assignee's acknowledgement in writing that this Pledge Addendum has terminated.

Except as expressly provided elsewhere in this Pledge Addendum, all proceeds received by Assignor in respect of including, but not limited to, any insurance money collected from a third-party payor upon all or any part of the Assigned Deposits shall be applied in full or in part by the Assignee against, the amount obligated to pay in the following order of priority:

**first**, to any accrued interest due to Assignee;

**second**, to the extent of any excess of such proceeds to repayment of the principal amount of the Loan made to and received by Assignee from Assignor;

**third**, to the extent of any excess of such proceeds, to the payment of any costs, expenses, legal fees and/or late charges incurred by Assignee;

**fourth**, to the extent of any excess of such proceeds, to the repayment of any other loans made to Assignor by Assignee, in such amounts and proportions as Assignee may determine in Assignee's sole discretion; and

**fifth**, to the extent of any excess of such proceeds, to the payment to or upon the order of such Assignee or to whosoever may be lawfully entitled to receive the same as a court of competent jurisdiction may direct.

In the event that any Loan issued hereunder becomes due prior to the receipt of any Assigned Deposits by the Assignor, the Assignor shall be obligated to pay to Assignee directly such sums, without regard to or reliance on the Assigned Deposits to repay the Loan hereunder and, upon payment in full, Assignee will release and waive this Pledge Agreement as related to the subject Assigned Deposits or any other collateral set forth in and secured by this Agreement.

As it relates it the management of cash relating to Assigned Deposits and all other cash that is collected from procedures conducted by each underlying clinic and subsidiary or related company of the Assignor, both parties agree that any and all of these proceeds shall be collected and paid to Collection Consolidations, LLC, a company owned by Assignee, in order to reconcile the payments relating to any pledged collateral or Assigned Deposits. It is understood and agreed that such reconciliation will occur on a weekly basis and Assignee will release the payments not related to any pledged collateral or Assigned Deposits at such time as Assignor provides Assignee with adequate reconciliation and support to Assignee to support any such cash movements. Assignor agrees that as a condition of this Agreement and in consideration therefore, all sums collected by Assignor will be transferred to and held by Collection Consolidations, LLC for the benefit of Assignee.

**The Assignee**

**Name**: Dennis Klemming

**Capacity**: Director

**By**:

**Date**:

**Name**: Niklas Klemming

**Capacity**: Member

**By**:

**Date**:

**The Assignor**

**Name**: Jacob Gitman

**Capacity**: President

**By**:

**Date**:

**Name**: Yulia Kislyuk

**Capacity**: Manager

**By**:

**Date**:

**Collections Consolidation, LLC**

**Name**: Dennis Klemming

**Capacity**: Manager

**By**:

**Date**:

63

64

Authority

## Exhibit D

## Authenticity Attestation and Guarantee

*referencing*

## Pledge Addendum for MLA - ICA - USD

*by and between*

# Sinai Holdings, LLC

*and*

# International Capital Allocation Ltd.

I, Jacob Gitman, in my capacity as President for Sinai Holdings, LLC, the Borrower or Assignor of the Assigned Deposits within the Pledge Addendum to this Agreement, hereby verify and attest to the authenticity of the receivables being pledged to the benefit of the Borrower in consideration of the financings contemplated under this Agreement.

In the event that any receivable pledged hereunder is:

(i)     Fraudulently produced, or
(ii)    Generated unintentionally through operational errors, or
(iii)   Already been paid, or
(iv)    Non-existent for any other reason.

Then, the Lender or Assignee has the right to seek remuneration from the Assignor with respect to any amounts advanced against such pledged receivable(s) provided that the Lender can prove on a commercially reasonable basis that a pledged receivable should be classified as such.

It is understood and agreed that the financial wherewithal of Sinai Holdings, LLC stands behind this guarantee and shall be held liable to rectify and ensure that the Lender shall not be impaired by the pledge of any receivables which fall under the description of (i) through (iv) as provided herein.

*Signed and Agreed by:*

**Name**: Jacob Gitman                                          **By**:

**Capacity**: President of Sinai Holdings, LLC                  **Date**:

**65**