

**ORDERED in the Southern District of Florida on April 1, 2025.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 15 |
| SPI INVESTMENT FUND SPC (IN OFFICIAL LIQUIDATION),[1] *et al.*, | Case No. 24-21184 |
| | (Jointly Administered) |
| Debtors in a Foreign Proceeding. | |
| _____/ | |

**ORDER GRANTING AGREED *EX PARTE* MOTION**
**FOR APPROVAL OF STIPULATION FOR PROTECTIVE ORDER**

THIS MATTER came before the Court *ex parte* upon the *Agreed Ex Parte Motion for Approval of Stipulation for Protective Order* [ECF No. 60] (the "**Motion**")[2] filed by Andrew Morrison, David Griffin, and Iain Gow, the duly appointed foreign representatives of SPI

---

[1] The last four digits of the foreign identification number follow in parentheses: SPI Investment Fund SPC (in Official Liquidation) (9606); International Portfolio Allocation Ltd. (in Official Liquidation) (7986); and International Capital Allocation Ltd. (in Official Liquidation) (2570). The registered office of SPI Investment Fund SPC (in Official Liquidation) is c/o FTI Consulting (Cayman) Ltd., Suite 3206, 53 Market Street, Camana Bay, PO Box 30613, Grand Cayman KY1-1203, Cayman Islands. and the registered office of International Portfolio Allocation Ltd. (in Official Liquidation) and International Capital Allocation Ltd. (in Official Liquidation) is c/o FTI Consulting (Cayman) Ltd., Suite 3206, 53 Market Street, Camana Bay, PO Box 30613, Grand Cayman KY1-1203, Cayman Islands.

[2] Capitalized terms used but not otherwise defined in this Order will retain the meaning ascribed to them in the Motion.

Investment Fund SPC (in Official Liquidation), International Capital Allocation Ltd. (in Official Liquidation), and International Portfolio Allocation Ltd. (in Official Liquidation), each in liquidation by way of the Financial Services Division of the Grand Court of the Cayman Islands (cause nos. FSD 393 of 2023 (JAJ) (SPI), FSD 151 of 2024 (JAJ) (ICA), and FSD 153 of 2024 (JAJ) (IPA)).

After consideration of the Motion and the record of these chapter 15 cases, and being otherwise fully advised in the premises, it is **ORDERED THAT:**

1.     The Motion is **GRANTED**.

2.     The *Stipulation for Protective Order* attached to this Order as **Exhibit 1** is approved and is effective immediately upon entry of this Order.

3.     This Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to the Motion or the interpretation and implementation of this Order.

###

**Submitted by**:

Holland & Knight LLP
Joaquin J. Alemany
701 Brickell Ave, Suite 3300
Miami, Florida 33131
Telephone: (305) 789-7763
Email: joaquin.alemany@hklaw.com

*Attorney Alemany is directed to serve a conformed copy of this Order upon all nonregistered users or registered users who have yet to appear electronically in this case and file a conforming certificate of service.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 15

SPI INVESTMENT FUND SPC                                   Case No. 24-21184
(IN OFFICIAL LIQUIDATION),[1] *et al.*,
                                                          (Jointly Administered)
Debtors in a Foreign Proceeding.
_____/

## STIPULATION FOR PROTECTIVE ORDER

1.      This Stipulation and Proposed Protective Order (the "**Stipulation**" or

"**Protective Order**") is entered into by and among:  (i) Andrew Morrison, David Griffin, and Iain

Gow of FTI Consulting (Cayman) Ltd., in their capacities as Joint Official Liquidators of SPI

Investment Fund SPC (in Official Liquidation) ("**SPI**"), International Capital Allocation Ltd. (in

Official Liquidation) ("**ICA**") and International Portfolio Allocation Ltd. (in Official Liquidation)

("**IPA**," together with SPI and ICA, the "**Funds**") (collectively, the "**Foreign Representatives**"),

each in liquidation by way of the Financial Services Division of the Grand Court of the Cayman

Islands (the "**Grand Court**") (cause nos. FSD 393 of 2023 (JAJ) (SPI), FSD 151 of 2024 (JAJ)

(ICA), and FSD 153 of 2024 (JAJ) (IPA)) (collectively, the "**Cayman Proceedings**"), and as

foreign representatives (the "**Foreign Representatives**") in the above-captioned chapter 15 cases

---

[1] The last four digits of the foreign identification number follow in parentheses: SPI Investment Fund SPC (in Official Liquidation) (9606); International Portfolio Allocation Ltd. (in Official Liquidation) (7986); and International Capital Allocation Ltd. (in Official Liquidation) (2570). The registered office of SPI Investment Fund SPC (in Official Liquidation) is c/o FTI Consulting (Cayman) Ltd., Suite 3206, 53 Market Street, Camana Bay, PO Box 30613, Grand Cayman KY1-1203, Cayman Islands. and the registered office of International Portfolio Allocation Ltd. (in Official Liquidation) and International Capital Allocation Ltd. (in Official Liquidation) is c/o FTI Consulting (Cayman) Ltd., Suite 3206, 53 Market Street, Camana Bay, PO Box 30613, Grand Cayman KY1-1203, Cayman Islands.

(the "**Chapter 15 Cases**"),[2] (ii) Alliance Metals, LLC, (iii) Technocon International, Inc., (iv) Sinai Holdings, LLC, (v) Athena Medical Management Group, LLC, (vi) Jacob Gitman, (vi) Ariel Gitman, (viii) Allen Licht, (ix) Frontier Surgical Holdings, LLC, (x) Physician Surgical Network, LLC, (xi) Medical Specialists of Fort Lauderdale, LLC, (xii) Surgical Specialists of St. Lucie County, LLC, (xiii) Surgical Treatment Center, LLC, (ix) IV Infusion Treatment Center, LLC, and (xv) such other parties in interest in the Chapter 15 Cases who become parties to this Protective Order from time to time and who execute an acknowledgment substantially in the form attached hereto as **Exhibit A** (an "**Acknowledgment**").  Each of the persons or entities identified in the foregoing clauses (i) through (xv) shall be referred to herein individually as a "**Party**" and, collectively, as the "**Parties**".  The Producing Parties and the Receiving Parties shall each be referred to herein as a "**Party**" and collectively as the "**Parties**."

2.      The Parties hereby stipulate, pursuant to 11 U.S.C. 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure and, with respect to any existing or future contested matter or adversary proceeding, pursuant to Bankruptcy Rules 7026 and 9014 and Rule 26(c) of the Federal Rules of Civil Procedure by and through their respective attorneys of record, subject to Court approval, to the entry of this Protective Order.

3.      This Stipulation shall apply to any Information, Document or thing produced by any Producing Party to any Receiving Party pursuant to a 2004 Request or other information request that has been or will be exchanged as part of discovery in the Chapter 15 Cases.

4.      This Stipulation governs the production or provision of Discovery Material in connection with the Chapter 15 Cases and does not affect, amend, or modify any existing

---

[2] The defined term "Chapter 15 Cases" shall include any actions, investigations, contested matters, adversary proceedings and other disputes related to or arising out of those matters, the Chapter 15 Cases or the Cayman Proceedings.

confidentiality agreements applicable to any Party, and nothing in this Stipulation shall constitute a waiver of any rights under such agreements.

5. **Definitions**. As used in this Protective Order, these terms have the following meanings:

a. "**2004 Requests**" means each of the subpoenas and document requests contained in the notices of examination *duces tecum* filed in the Chapter 15 Cases at ECF Nos. 44-48, and 50-53 and such other subpoenas and document requests that may be filed in the Chapter 15 Cases.

b. "**Advisor**" means any company or organization working for or on behalf of a Producing Party or Receiving Party to aid in the production or review of Discovery Materials.

c. "**Challenging Party**" means the Party that challenges a particular designation of Discovery Materials as Confidential.

d. "**Confidential Material**" or "**Confidential**" means Discovery Material, and any other material designated as Confidential in accordance with this Protective Order unless (a) the Producing Party withdraws the Confidential designation, or (b) the Court has determined that the material or Information does not constitute Confidential Material. All Discovery Material shall initially be designated Confidential. If the Receiving Party challenges the designation of any Discovery Material as Confidential in accordance with section 8 of this Protective Order, the Producing Party may only seek to retain the Confidential designation if it has a good-faith basis to believe that the Discovery Material is, constitutes or contains Information that is Confidential under statute, rule, or other applicable law that Discovery Materials are confidential,

proprietary or commercially sensitive business or financial information, trade secrets, or information that is not publicly available, such as information that otherwise meets the standard for protection set forth in Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure and Rules 7026 or 9018 of the Federal Rules of Bankruptcy Procedure, or that the Producing Party is under a preexisting obligation to a third party to treat as confidential.  Notwithstanding the foregoing, Confidential Material shall not include any Documents that have been made publicly available, including through unsealed court filings and/or other similar means by which Information was placed in the public domain.

     e.    **"Discovery Material"** means Documents and Information in the custody and control of a Producing Party produced pursuant to a 2004 Request or other request for information made by a Receiving Party that has been or will be exchanged as part of diligence, discovery, or otherwise in the Chapter 15 Cases.  It shall also include things produced in connection with any type of diligence or discovery request whether voluntarily or involuntarily (including any Information, Documents and things provided via electronic access to data rooms or other hosted sites); and Documents and things provided pursuant to subpoena in connection with the Chapter 15 Cases.  Discovery Material shall also include all Information, filings, Documents, and things derived therefrom, based on any of the foregoing material, in whole or in part.

     f.    **"Document(s)"** includes all materials within the scope of Rule 34(a) of the Federal Rules of Civil Procedure.

     g.    **"Information"** includes all materials within the scope of Documents, exhibits, evidence or things used at trial, depositions or other proceedings; any

testimony, whether given at trial or a deposition; and any other means of presenting, producing or revealing information.

        h.    **"Producing Party" or "Designating Party"** means the Party producing Discovery Material and designating such materials as Confidential.

        i.    "**Receiving Party**" means a Party requesting, receiving or having access to Discovery Material.

6.    **Access to Confidential Material.** All Discovery Material designated as Confidential Material shall not be further disclosed, disseminated, or used for any purpose other than in connection with the Chapter 15 Cases, consistent with the restrictions on use of Confidential Material contained in this Protective Order.  Access to any Confidential Material shall be limited to use in the Chapter 15 Cases to:

        a.    Judges, court reporters, court personnel, videographers, and special masters at trial, hearings, arguments, depositions and any other judicial proceeding related to the Chapter 15 Cases.

        b.    The liquidation committee appointed in connection with the Cayman Proceedings (the "**Liquidation Committee**"), provided that no Confidential Information shall be shared with any member of the Liquidation Committee unless such member has executed an Acknowledgement.

        c.    The Parties and counsel for the Parties and the attorneys, secretaries, paralegals, assistants, and other employees in the same firm/company of such counsel, in all cases only to the extent reasonably necessary to render professional services.

        d.    Messenger, copy, and other clerical services vendors not employed by a party or its counsel of record, only to the extent reasonably necessary to assist the parties

and counsel of record for the parties in rendering professional services in connection with the Parties' mandates as they relate to the Chapter 15 Cases.

e.    The insurers or indemnitors of the Parties or any agents retained by the insurers or indemnitors.

f.    Witnesses during depositions, hearings and trial testimony related to the Chapter 15 Cases, either during deposition, hearing or trial testimony or to the extent reasonably necessary to prepare persons to testify, and counsel for such persons.

g.    Advisors, experts, or consultants retained for the purpose of assisting counsel of record's production or review of Discovery Materials.

h.    Third-party contractors retained for the purpose of organizing, filing, coding, converting, storing, or retrieving Discovery Material or maintaining database programs for handling of Discovery Material.

i.    Other persons subject to confidentiality agreements consistent with this Protective Order, or persons who may be designated by written consent of the Producing Party or Receiving Party or pursuant to Court order so long as said persons agree to be bound as set forth in this Protective Order.

j.    Any government agency, internal or external auditor or regulatory body or authority having authority to regulate or oversee any aspects of the Receiving Party's business or that of its affiliates, if required by any applicable statute, law, rule or regulation, subpoena, civil investigative demand or similar demand, or request; provided that (i) the Receiving Party will provide the Producing Party with prior written notice of any such request or requirement (unless such notice is prohibited by applicable law) so that the Producing Party may seek a protective order or other appropriate remedy, and

(ii) the Receiving Party advises such recipient of the Confidential nature of the information being disclosed and requests Confidential treatment thereof.

7. **Filing Confidential Information with the Court.** Any Document containing Confidential Information filed in any court, and all portions of pleadings, motions, or other papers filed with a court that disclose Confidential Information shall be filed under seal in accordance with local rules and any applicable court's procedures. A party filing any documents or information under seal in the United States Bankruptcy Court for the Southern District of Florida pursuant to this Protective Order shall comply with all procedures set forth in the Local Rules for the United States Bankruptcy Court for the Southern District of Florida (the "**Local Rules**"). The Designating Party shall be responsible for responding to any objections to the motion to file under seal, and shall have the burden of showing that the Documents or Information are Confidential Information. The filing party shall file a publicly viewable copy in redacted form, with all Confidential Information removed. An unredacted copy shall be filed by the filing party under seal with the Clerk of the Court and kept under seal until further order of the Court, and provided to the Court and all parties entitled to receive such Confidential Information. Sensitive personal Information may be redacted from filings without filing an unredacted copy under seal with the Clerk of the Court.

8. **Contesting Designation of Documents**. If any Party believes that any Document or Information designated Confidential does not constitute Confidential Information, then that Challenging Party may challenge that designation by notifying the Designating Party in writing, identifying the Documents or Information contested, and articulating the reason(s) for challenging the designation. The parties shall promptly confer in good faith and use their best efforts to resolve any challenge to a designation. If the parties are unable to resolve the dispute within seven (7)

-6-

days of the notice to the Designating Party of such challenge, or the Designating Party does not respond within such time, then the Challenging Party may request resolution of the dispute by the Court.  The Designating Party shall have the burden of showing that the Documents or Information are Confidential.

9.     **No Waiver of Any Privilege Upon Production.**  The production of Documents or electronically stored information ("**ESI**") subject to any claim of privilege or production, including but not limited to work-product or attorney-client privilege shall not constitute a waiver of the privilege as to the produced information or any other information.  The production of privileged or work-product protected documents, ESI, or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other proceeding.

10.    **Production of Documents.**  The Parties mutually seek to reduce the time, expense, and other burdens of discovery of Documents and ESI, and to better define the scope of their obligation with respect to producing such Information and materials, consent to the provisions contained in the Protocol for Document Collection and Production ("**Protocol**"), attached hereto as **Exhibit B.**  Within five (5) business days of completing production of Discovery Material responsive to a 2004 Request or other request for information made by a Receiving Party, each Producing Party shall submit to the Foreign Representatives (i) an affidavit of completeness signed by the Producing Party attesting that such Producing Party has conducted a reasonably diligent inquiry of its records and has, to the best of its knowledge, produced all Information and Documents responsive to all applicable 2004 Requests, and (ii) an affidavit signed by an ESI vendor that sets forth (a) the ESI searches conducted, (b) the methodology used to conduct ESI searches, (iii) each source (*e.g.*, server, laptop, mobile phone) from which Discovery Material was collected, and (iv) a statement that no documents responsive to the 2004 Requests have been

deleted. To the extent a Producing Party has produced Discovery Material and executed an affidavit in another case subject to a materially similar protective order, service of the affidavit executed in the other case satisfies the requirements set forth in this paragraph.

11. **Use of Designated Information.** Confidential Information shall be maintained in confidence by counsel for the parties and by the parties themselves and may be used only for the purpose of the Chapter 15 Cases, and no other purpose. Nothing in this Protective Order limits any Party to this Protective Order from disclosing or otherwise using:

  a. its own Documents or Information produced or disclosed in this action;

  b. Documents or Information that are not otherwise Confidential that a Party possessed prior to the entry of this Order or that it obtained by proper means from other sources.

12. **Non-Waiver of Objections.** Neither this Protective Order nor any of the provisions described herein is a waiver of any Party's right to any objection, including but not limited to any objection concerning the admissibility or discoverability of any Documents or Information.

13. **Binding Effect**. The Parties agree to submit this Stipulation for entry by the Court and to be bound by its terms while awaiting its entry by the Court. The provisions of this Protective Order shall, absent written consent of all of the Parties or further order of the Court, continue to be binding after the conclusion of the Chapter 15 Cases and throughout any related litigation or investigation, including without limitation any appeals therefrom.

14. **Notice**. Notice required or permitted to be given for any purpose under this Protective Order shall be delivered to the Parties in writing by electronic mail and U.S. Mail at the addresses set forth on the attached signature pages (including the addresses set forth on any

Acknowledgement signed by an additional Party).  Notice shall be deemed effective upon receipt by the Party or person to whom notice is provided.

15.    **Additional Parties**.  Additional parties may be added to this Stipulation in the future in the following manner:  Any additional party that has executed and delivered to the Foreign Representatives a complete and executed Acknowledgment shall become a Party and shall be subject to all of the provisions of this Stipulation and any resulting Protective Order as if the additional party were an original Party.

16.    **Continuing Jurisdiction**.  The Court retains exclusive jurisdiction to enforce, modify, or vacate all or any portion of this Stipulation upon appropriate motion by a party in interest.  Nothing herein shall preclude any person from seeking to amend or modify the terms of this Protective Order upon appropriate motion and order of the Court.

17.    **Counterparts**.  This Stipulation may be executed in multiple counterparts.  The Parties agree that their respective signatures will be effective and a counterpart containing an electronic copy of the signature page shall have the same force and effect as an original.

18.    **Procedural Device**.  This Protective Order is a procedural device intended to protect Discovery Materials designated as Designated Materials.  Nothing in this Protective Order shall affect any Party's rights or obligations unrelated to the confidentiality of Discovery Materials.

19.    **Obligations of Parties**.  Nothing herein shall relieve a Party of its obligations under the Federal Rules, Bankruptcy Rules, Local Rules, or under any future stipulations and orders, regarding the production of documents or the making of timely responses to Discovery Requests in connection with any Dispute or the Chapter 15 Cases.

*[Remainder of page intentionally left blank]*

Dated: March 31, 2025

**STOK KON + BRAVERMAN**

/s/ Theodore Sandler
Theodore (Tuvia) Sandler (FL Bar No. 1015927)
Joshua R. Kon, Esq. (FL Bar No. 0056147)
1 East Broward Blvd, Suite 915
Fort Lauderdale, FL 33301
Telephone: (954) 237-1777
Email: tsandler@stoklaw.com
         jkon@stoklaw.com

*Counsel to Alliance Metals, LLC, Technocon International, Inc., Sinai Holdings, LLC, Athena Medical Management Group, LLC, Jacob Gitman, Ariel Gitman, Allen Licht, Frontier Surgical Holdings, LLC, Physician Surgical Network, LLC, Medical Specialists of Fort Lauderdale, LLC, Surgical Specialists of St. Lucie County, LLC, Surgical Treatment Center, LLC, and IV Infusion Treatment Center, LLC.*

Respectfully Submitted,

HOLLAND & KNIGHT LLP

/s/ Joaquin Alemany
Joaquin J. Alemany (FL Bar No. 662380)
Alex M. Englander (FL Bar No. 1035437)
701 Brickell Ave, Suite 3300
Miami, Florida 33131
Telephone: (305) 789-7763
Email: joaquin.alemany@hklaw.com
alex.englander@hklaw.com

Warren E. Gluck (admitted *pro hac vice*)
Elliot A. Magruder (admitted *pro hac vice*)
787 Seventh Avenue, 31st Floor
New York, New York 10019
Telephone: (212) 513-3200
Email: warren.gluck@hklaw.com
elliot.magruder@hklaw.com

*Counsel for the Foreign Representatives*

-10-

## <u>EXHIBIT A</u>

## <u>ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND</u>

The undersigned hereby acknowledges and agrees to the following terms and conditions:

My name is _____.

[My present employer is _____.]

I have been [engaged][appointed] as _____ on behalf of _____ in with respect to the [above-captioned matter] [Cayman Proceedings].

I have read the annexed Protective Order, dated _____, 2025, in the above-captioned matter.

I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order and consent to the jurisdiction of the United States Bankruptcy Court for the Southern District of Florida for the purpose of any issue or dispute arising hereunder.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: _____

By: _____

Name: _____

Title: _____

Address: _____

_____

## <u>EXHIBIT B</u>

## <u>PROTOCOL FOR DOCUMENT COLLECTION AND PRODUCTION</u>

This Protocol supplements the Federal Rules of Civil Procedure and the Local Rules of the United States Bankruptcy Court for the Southern District of Florida.  The Parties mutually seek to reduce the time, expense, and other burdens of discovery of certain hard copy documents and ESI, and to better define the scope of their obligation with respect to producing such information and materials. This Protocol is intended to promote a "just, speedy, and inexpensive determination" of the Chapter 15 Cases.  Fed. R. Civ. P. 1.  This Protocol does not prevent the Parties from negotiating additional agreements regarding discovery as may be necessary in the course of this action.  This Protocol is not intended to expand any document storage, preservation, or production requirement beyond the common law or the Federal Rules of Civil Procedure or to limit any protections otherwise available to a Party under the Federal Rules of Civil Procedure or the Federal Rules of Evidence.

### I.       **Preservation and Production of Data**

1.       By preserving information that is reasonably anticipated to be subject to discovery in this action in accordance with the terms of this Stipulation and Order, no Party shall be deemed to have waived any objection to particular discovery requests or the scope of discovery.

2.       Absent a showing of good cause by a Party, activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery.

3.       The Parties shall confer regarding the identification and collection of sources of relevant ESI, including: (a) the identity and role of custodians possessing relevant information from whom documents will be collected and produced; (b) search methodology and search terms, if any, to be applied, and use of technology assisted review ("**TAR**") or similar technologies; (c) relevant data sources, including custodial and non-custodial documents; and (d) any applicable and appropriate timeframes for the production of documents.

4.     The Parties will confer regarding search methodologies, search terms, date restrictions, and custodian restrictions.  If implementing any search based on key word search terms, the Producing Party will provide a list of proposed search terms to the Receiving Party (*i.e.*, the party requesting documents) thereby providing the Receiving Party with an opportunity to discuss those terms and any additional terms, or other requested changes, proposed by the Receiving Party.  The Parties shall participate a cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate methods to increase the relative precision or proportion of relevant and responsive documents within the search results and production sets.

5.     The Parties shall meet and confer about any other technology or process used to streamline discovery that is either outside of the usual discovery processes and technologies or is inconsistent with industry best practices.

## II.     ESI Production Specifications

1.     Except as set forth below, a Producing Party may produce ESI in native file format or in single-page TIFF format with corresponding load files and multi-page OCR text or extracted text files.  TIFF files shall be created directly from the original electronic documents; a Party may not create a TIFF file from ESI by printing out paper copies of that electronic document and then scanning that paper copy of the ESI unless not feasible in certain circumstances, all TIFF files will conform to the following specifications :

     i.     All TIFF files will be single page,  black  and  white  TIFF  at 300x300 dpi resolution and $8^{1/2}$ x 11 inch page size, except and to  the  extent  reasonably  practicable  for  documents  requiring color  or  different  resolution  or  page  size  to  be  legible  and comprehensible. Tracked changes, comments, or notes or other similar information shall be imaged so that this information is captured on the produced image file.

     ii.     Each production of ESI and Documents shall include  a standard  format  load  file  (Opticon  opt,  Concordance.Dat,

Summation Dii, etc.) containing the production Beginning and Ending Bates numbers and the additional Metadata fields detailed below and the appropriate unitization of the documents and family relationship shall accompany the TIFF production.

iii.   Except as otherwise agreed by the parties, all productions shall be made in .opt and .dat file formats.

iv.    All TIFF images shall be branded in the bottom right with a Bates number, beginning with "ABC_0000000l." Each page will also be branded in the bottom left corner with the appropriate confidentiality designation consistent with any protective order entered. Bates numbers should contain an alphanumeric prefix followed by an 8 digit number. Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits. All ESI produced in TIFF format shall contain a unique Bates Number on each page of the document, electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document.

v.     Parties shall produce the following metadata fields to the extent they exist with respect to the original electronic document or information, including files produced natively pursuant to paragraph l(vii) below:

1.   BegAttach
2.   EndAttach
3.   From
4.   To
5.   CC
6.   BCC
7.   Subject
8.   Datesent
9.   Datecreated (documents)
10.  DateModified  (documents)
11.  Custodian
11.  FileName
12.  FileType
13.  OriginalFilePath
14.  Bates Begin
15.  Bates End
16.  Dedupped Custodian
17.  Dedupped Custodian Path

18.     All Custodian
19.     All Custodian Path
20.     MD5 Hash
21.     Extracted Text Path
22.     Native File link
23.     Page Count
24.     Confidential Designation
25.     Redaction
26.     File Size
27.     File Extension
28.     Author
29.     Production Volume
30.     Message ID
31.     ESI Type

vi.     Documents such as those that include hidden data, computer slide presentations (for example and without limitation PowerPoint files), spreadsheet files (for example and without limitation Excel files), audio files, video files, and other file types that cannot be accurately converted to image format as described in II.1.i. above shall be produced in native format unless such documents are redacted. The Producing Party shall produce a single page TIFF "placeholder" page for each such file bearing a Bates number and, if feasible, the placeholder page may also bear the file name, file type, and file extension.

vii.     The Parties' E-Discovery Liaison(s), as set forth below, in consultation with their respective technical personnel shall promptly consult in good faith on a reasonable protocol for producing databases , and files that may not easily conform to the protocol above. In the event the Parties are unable to agree, either Party may promptly move the Court for an Order.

viii.     The presumptive source of extracted text shall be from the native file. Where a document has been redacted and produced in a .TIFF format, OCR may be used to generate text for the text file.

2.     **De-duplication**.  To the extent identical copies of ESI exist in a Producing Party's files, the Producing Party need only produce one such identical copy.  Each Producing Party may remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent

email and all attachments are also duplicates.  An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  Near-duplicate documents shall not be removed without prior agreement of the parties.  Email thread suppression techniques will not be applied in production, although such techniques may be used as a review tool.  If global de-duplication is done across the entire collection, the Deduped Custodian field will list each custodian, separated by a semi-colon, who was a source of that document.

3.      **Zero-byte Files.**  The Parties may filter out files identified as zero bytes in size and any logo files.

4.      **Embedded Objects.**  Embedded objects or files such as Excel spreadsheets, Word documents, audio and video files shall be extracted and searched consistent with its category of ESI Non-substantive embedded files, such as logos, need not be extracted.  All embedded files produced under this procedure shall be produced subject to the same requirements set forth in this Protocol.  For production purposes, embedded files shall be identified as attachments to the parent document in which the file was embedded, and load files for such embedded files shall refer to the parent document in which the file was embedded.

### III.     Supplemental Production of Specific Native Format Documents

1.      Other than as set forth above, a Party may request native format files of electronic documents from a Producing Party in accordance with the provisions of this Section III (each, a "**Requesting Party**").

2.      No Requesting Party may seek to compel production of native format files on a wholesale or otherwise unreasonable basis.

3.      Any request for native documents will be carried out under the following protocol:

    i.   The Requesting Party will identify the native files sought by Bates range.

    ii.   The Producing Party will respond in writing within ten (10) calendar days by either agreeing or refusing to produce the requested files.

    iii.   If the Producing Party agrees to the request, the production shall be made within fifteen (15) calendar days of the notification of agreement or as otherwise agreed by the parties.

    iv.   If the Producing Party refuses to produce the requested file(s), it shall provide a written statement of the reasons it declines the request. If the reason is technical difficulty in producing, the written statement shall detail the technical difficulty.

    v.   The Requesting Party may then move the Court for relief, and any objections shall be due seven (7) days after service of the Motion. No reply briefs will be permitted.

**IV.    Costs**

The cost of preserving, collecting and producing documents shall be borne by the Producing Party. In the event, however, that a Party requests documents that would result in the production of cumulative or repetitive information that otherwise imposes an undue burden or expense, the Producing Party (*i.e.*, the party producing documents) may object in writing to the Receiving Party. The Parties shall work to resolve any such objection. In the event that a Producing Party is unable to resolve an objection within seven (7) days of submitting a written objection to the Receiving Party, the Producing Party may move the Court for an Order shifting the cost of producing such cumulative or repetitive information or information that otherwise imposes an undue burden or expense to the Receiving Party. If the Producing Party does not move the Court for an Order shifting the costs of production within seven (7) days of its written objection, such objection shall be deemed resolved in favor of the Receiving Party and the Producing Party shall bear the cost of production.

**V.    Other Issues**

1.    **English Language.** To the extent any Document exists in more than one language, the Document shall be produced in English, if available. If no English version of the Document is

available, the Producing Party does not have an obligation to produce an English translation of that Document.

2.      **Protective Order.**  The terms of any Stipulated Protective Order filed with the Court are incorporated herein by reference and also govern all production pursuant to this Document Production Protocol.

3.      **Further Conferral.**  If any Party determines that any of the requirements in this Protocol impose an undue burden or otherwise pose an issue with respect to compliance, the Parties shall meet and confer regarding that issue, including discussing, as appropriate, an alternative process or processes.

4.      **Privilege.**  Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

5.      **Production Format.**  Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), an external hard drive, via a secure FTP site, or similar electronic format.